884 So.2d 552 (2004)
In re Lloyd J. LeBLANC, Jr.
No. 2004-B-0681.
Supreme Court of Louisiana.
October 14, 2004.

*553 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, *554 Lloyd J. LeBlanc, Jr., an attorney licensed to practice law in Louisiana.

UNDERLYING FACTS
In September 1986, Nancy Blackwell filed a defamation suit against her former employer, Brown & Root, Inc. Nancy Blackwell v. Brown & Root, Inc., No. 30,887 on the docket of the 29th Judicial District Court for the Parish of St. Charles. In September 1994, when Ms. Blackwell's original attorney was no longer able to continue handling the matter, attorney James Quaid enrolled as Ms. Blackwell's counsel of record. Shortly thereafter, Mr. Quaid was disbarred by this court.[1]
In February 1995, Ms. Blackwell, who then resided in Arkansas, met with respondent at his office in Louisiana to discuss the pending suit. Respondent advised Ms. Blackwell that he would "look into her case." After a short delay, respondent received Ms. Blackwell's file from Mr. Quaid. Over the next five years, respondent had frequent telephone conversations with Ms. Blackwell in which they discussed the defamation suit and the efforts respondent was purportedly making to move the case forward. Nevertheless, during this time, respondent did not review Ms. Blackwell's file or the court record, did not enroll as her counsel of record, and took no action in the litigation on her behalf.
In March 2000, Ms. Blackwell's defamation suit was dismissed as abandoned on motion of Brown & Root. Ms. Blackwell was unaware of this turn of events because the trial court's record did not contain her correct mailing address. Respondent learned of the dismissal sometime in November or December 2000, when he reviewed the court record for the first time. On December 6, 2000, respondent wrote Ms. Blackwell a letter notifying her that her case had been dismissed.
In August 2001, Ms. Blackwell filed a complaint against respondent with the ODC. In January 2002, respondent returned Ms. Blackwell's file to her by mail. On August 26, 2002, one year after the filing of the disciplinary complaint, but prior to the filing of formal charges against respondent by the ODC, respondent sent Ms. Blackwell a letter of apology, along with a check for $10,000. In the letter, respondent stated:
I am writing you now to do what I should have done a long time ago. I am writing to apologize for what happened in your case.
I should have either enrolled as counsel of record on your behalf, and taken steps to bring the case to a conclusion, or I should have told you that I was unable to represent you.
I deeply regret my failure in this regard.
Enclosed is my check in the amount of $10,000.00 which I hope will serve as some compensation for my failures. Accepting this check will not adversely affect any of your rights against me. You have the right to seek the advice of an independent attorney with respect to your claims against me.
I will understand if you do not accept my apology. I only wish I had given it earlier.
In September 2002, Ms. Blackwell filed a legal malpractice suit against respondent and his professional liability insurer, seeking damages for respondent's failure to prosecute the defamation suit. Ms. Blackwell's malpractice suit was eventually dismissed after the trial court granted an exception of prescription filed by the defendants.

*555 DISCIPLINARY PROCEEDINGS
Following its investigation, the ODC filed one count of formal charges against respondent, alleging his conduct violated Rules 1.1(a) (failure to provide competent representation to a client), 1.2(a) (scope of the representation), 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.8(h) (improperly settling a malpractice claim with an unrepresented client), 1.16(d) (obligations upon termination of the representation), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.
In his answer to the formal charges, respondent denied the ODC's allegations. Specifically, respondent asserted that he did not make any attempt to deceive Ms. Blackwell about her case. Alternatively, respondent sought a hearing in mitigation.

Formal Hearing
This matter proceeded to a formal hearing before the hearing committee. The ODC presented the testimony of Ms. Blackwell and James "J.D." Monk, who was present at the initial meeting between respondent and Ms. Blackwell. Respondent testified on his own behalf. Additionally, he called as witnesses Sharon Lee, who initially referred Ms. Blackwell to him, and Rob Worley, the attorney for Brown & Root. Respondent also introduced testimony, both in person and by affidavit, concerning his good character and reputation in the community.

Hearing Committee Recommendation
At the conclusion of the hearing, the hearing committee filed its report with the disciplinary board. The committee determined that Ms. Blackwell possessed a reasonable subjective belief that respondent was representing her in the defamation suit. In particular, the committee relied on respondent's admission that he never told Ms. Blackwell that he was not her attorney, nor did he advise her that she should hire an attorney to pursue her claims against Brown & Root. The committee found respondent discussed the case with Ms. Blackwell on a frequent basis, telling her that "I'll try to help you," "I'll try to do what I can to help you," and that he would see what he could do to "move [the case] along."
Having found an attorney-client relationship existed between respondent and Ms. Blackwell, the committee concluded that respondent violated the Rules of Professional Conduct as charged in the formal charges. Respondent violated Rule 1.1(a) by failing to review the file or the court record of the case. The committee also found respondent did not abide by the scope of the representation, as required by Rule 1.2(a), because he advised Ms. Blackwell of a variety of actions that he would take in the lawsuit but failed to take any of these actions. It determined respondent violated Rule 1.3, which requires a lawyer to act with reasonable diligence, because he failed to take any action whatsoever on the record, or to advise Ms. Blackwell that he would not be able to represent her. Turning to Rule 1.4, the committee found respondent failed to communicate with his client because he provided her with inaccurate information concerning the case and mislead her concerning his actions.
With regard to respondent's actions following the dismissal of the case, the committee found he violated Rule 1.8(h) by failing to promptly advise Ms. Blackwell of the dismissal of her lawsuit or that she should seek the advice of independent counsel in connection with his malpractice. It also found he violated Rule 1.16(d) by failing to promptly return her file.
*556 Finally, the committee found respondent's actions as a whole violated the prohibition against deceitful conduct and conduct prejudicial to the administration of justice in Rules 8.4(c), and (d), respectively. The committee observed that respondent told his client, Ms. Blackwell, about actions he was taking or was going to take, when in fact he had not even reviewed the file or the court record. It concluded such conduct is dishonest and deceitful. Moreover, it found that permitting a client's case to be dismissed when the lawyer has failed to take any action on behalf of the client, and has failed to review the client's file or the court record, is conduct prejudicial to the administration of justice.
In determining a sanction, the committee found that respondent violated duties owed to his client, to the public, and as a professional. It concluded respondent's actions were at least knowing and harm was caused to Ms. Blackwell in that her lawsuit was dismissed as abandoned. Thus, the committee found the baseline sanction for respondent's misconduct is a suspension from the practice of law.
As aggravating factors, the committee recognized respondent's prior disciplinary offenses (a successfully completed diversionary matter), refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, and substantial experience in the practice of law (admitted 1975). In mitigation, the committee acknowledged respondent's good character and reputation. The committee did not consider respondent's payment of $10,000 in partial restitution to Ms. Blackwell to be either an aggravating or mitigating circumstance, because the payment was made after the filing of the disciplinary complaint.
Considering all the facts of this case, the committee recommended that respondent be suspended from the practice of law for a period of one year and one day, with all but forty-five days deferred, to be followed by an eighteen-month period of supervised probation governed by specified conditions.
Both respondent and the ODC filed objections to the hearing committee's report and recommendation.

Disciplinary Board Recommendation
After reviewing this matter, the disciplinary board concurred in the hearing committee's factual findings and application of the Rules of Professional Conduct. The board also made additional factual findings relating to the existence of the attorney-client relationship between respondent and Ms. Blackwell, specifically noting that Ms. Blackwell's testimony at the hearing established her subjective belief that respondent was representing her in the suit against Brown & Root.
Respondent violated duties owed to his client, to the legal system, and as a professional. His actions were knowing and caused injury to Ms. Blackwell in that her suit was dismissed on grounds of abandonment; however, the board also noted that Ms. Blackwell has received restitution from respondent for his failure to pursue the legal action against Brown & Root.
In mitigation, the board recognized respondent's timely good faith effort to make restitution and to rectify the consequences of his misconduct, full and free disclosure to the disciplinary board and cooperative attitude toward the proceedings, good character and reputation, and remorse. As aggravating factors, the board acknowledged the vulnerability of the victim and respondent's substantial experience in the practice of law.
Turning to the issue of an appropriate sanction for respondent's misconduct, the board noted the baseline sanction is suspension under the ABA's Standards for *557 Imposing Lawyer Sanctions.[2] Considering the mitigating factors and noting that it was impressed by respondent's candor during oral argument, the board recommended that respondent be suspended from the practice of law for one year, all but thirty days deferred, with any misconduct occurring during a one-year period following the finality of the court's order being grounds for making the deferred period of suspension executory.
Neither respondent nor the ODC filed an objection to the disciplinary board's recommendation.

DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Based upon our review of the record, we conclude the hearing committee's finding of fact that an attorney-client relationship existed between respondent and Ms. Blackwell is not clearly wrong. As we explained in Louisiana State Bar Ass'n v. Bosworth, 481 So.2d 567, 571 (La.1986), the existence of an attorney-client relationship "turns largely on the client's subjective belief that it exists." Ms. Blackwell's testimony reveals that she clearly believed respondent was her attorney. Respondent's actions over the five-year period at issue fostered Ms. Blackwell's belief that he was taking action on her behalf in the defamation suit. At no time did respondent clearly and unequivocally advise Ms. Blackwell he did not intend to represent her.
Having found an attorney-client relationship existed, we conclude the hearing committee correctly determined that respondent violated Rules 1.1(a) and 1.2(a) by failing to represent Ms. Blackwell with competence. Likewise, we find he violated Rule 1.3 by failing to act with reasonable diligence and promptness and violated Rule 1.4 by failing to fully communicate with Ms. Blackwell about the status of the case.
However, we do not find the record supports the conclusion that respondent violated Rule 1.8(h) by improperly attempting to settle his malpractice liability. Although respondent did send Ms. Blackwell a check for $10,000, his accompanying cover letter explained that accepting the check "will not adversely affect any of your rights against me" and advised her of her right to consult with independent counsel. We conclude respondent's offer was in the nature of an unconditional tender, the acceptance of which would not prejudice Ms. *558 Blackwell's rights in any way. Accordingly, we do not believe respondent's actions violated Rule 1.8(h).
We also do not believe the record supports the conclusion that respondent violated Rule 1.16(d), which deals with an attorney's obligations upon the termination of a representation. The record reveals that shortly after respondent learned the case had been dismissed, he sent a letter to Ms. Blackwell advising her of that fact and indicated that attempts to proceed further would be futile. Respondent also returned Ms. Blackwell's file to her, albeit in a somewhat tardy fashion.
Likewise, we question whether the ODC proved by clear and convincing evidence that respondent acted with deceit in violation of Rule 8.4(b) and whether his actions were prejudicial to the administration of justice for purposes of Rule 8.4(c). Respondent has consistently taken the position throughout these proceedings that he was not Ms. Blackwell's lawyer and that his communications with Ms. Blackwell related only to actions he planned to take if he accepted the representation. Although we now find respondent's position that no attorney-client relationship existed is legally incorrect, we cannot say his statements to Ms. Blackwell were based on an intent to deceive her or harm her pending litigation.
In summary, we find the record supports violations of Rules 1.1(a), 1.2(a), 1.3, 1.4 and 8.4(a).[3] The remaining rule violations alleged by the ODC are not supported by the record.
Having found professional misconduct, we now turn to a discussion of an appropriate sanction. In considering that issue, we are mindful that the purpose of disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain the appropriate standards of professional conduct, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the standards of the profession. In re: Vaughan, 00-1892 (La.10/27/00), 772 So.2d 87; In re: Lain, 00-0148 (La.5/26/00), 760 So.2d 1152; Louisiana State Bar Ass'n v. Levy, 400 So.2d 1355 (La.1981). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. In re: Redd, 95-1472 (La.9/15/95), 660 So.2d 839; Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
Respondent's failure to clearly communicate with his client is at the heart of the misconduct in this case. Any misunderstandings about the representation could have been easily dispelled had respondent merely taken the time to send a letter to Ms. Blackwell at the inception of their contact advising whether he intended to accept or decline the representation. Instead, respondent's vague and ambiguous actions led Ms. Blackwell to believe her rights were being protected by respondent, when they in fact were not. As a result, Ms. Blackwell suffered harm due to the dismissal of her civil action on grounds of abandonment.
The jurisprudence of this court in bar disciplinary matters does not contain many cases involving analogous fact patterns, suggesting that such cases tend to be addressed by civil actions for legal malpractice *559 rather than in a disciplinary context.[4] In general, the baseline sanction for respondent's misconduct appears to be a suspension in the range of one year, all or part of which may be deferred. See, e.g., In re: Cantrell, 03-0910 (La.5/2/03), 848 So.2d 507 (lawyer suspended by consent for one year and one day, fully deferred, subject to an eighteen-month period of probation, where the lawyer neglected the complainant's appeal due to a belief that he never agreed to handle the complainant's case).
Several aggravating factors are present, including respondent's substantial experience in the practice of law and his prior disciplinary record.[5] In mitigation, we recognize respondent's good character and reputation and his efforts to make at least partial restitution to Ms. Blackwell through his $10,000 unconditional tender.
Considering these factors, we conclude the appropriate sanction is a suspension from the practice of law for a period of one year. We will defer all but thirty days of the suspension and place respondent on unsupervised probation for a period of one year, subject to the condition that any misconduct during the probationary period may be grounds for making the deferred portion of the suspension executory or imposing additional discipline, as appropriate.

DECREE
Upon review of the findings and recommendations of the hearing committees and disciplinary board, and considering the record, it is ordered that Lloyd J. LeBlanc, Jr., Louisiana Bar Roll number 8202, be suspended from the practice of law for a period of one year. It is further ordered that all but thirty days of the suspension shall be deferred, and respondent shall be placed on unsupervised probation for a period of one year, subject to the condition that any misconduct by respondent during the probationary period may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
NOTES
[1] See In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343.
[2] Standard 4.42(a) suggests that suspension is generally appropriate when a lawyer knowingly fails to perform services for a client, and causes injury or potential injury to the client; Standard 4.62 suggests that suspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client. Here, respondent failed to perform any substantial work on Ms. Blackwell's file, causing the case to be dismissed on grounds of abandonment. Further, respondent misrepresented to her the extent of the services he planned to perform on the case.
[3] A violation of Rule 8.4(a) occurs whenever a lawyer violates any other provision of the Rules of Professional Conduct.
[4] We note that Ms. Blackwell instituted a legal malpractice action against respondent, although that action was later found to be prescribed.
[5] As previously stated, respondent had been the subject of an unrelated complaint in 2000. This complaint was not the basis for formal discipline, but was referred by the ODC to diversion. The disciplinary board erroneously concluded that a complaint resolved by diversion could not constitute prior discipline. In fact, Supreme Court Rule XIX, § 10(A)(9) makes it clear that "diversion may be used as evidence in subsequent proceedings in which the respondent has been found guilty of misconduct bearing upon the issue of sanction to be imposed in the subsequent proceeding." Of course, in this context, a diverted matter may not carry the same weight as other forms of sanctions; nonetheless, it constitutes prior discipline which may be considered as an aggravating factor.