*643 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
1 ¡This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against the respondent, James Wallace Spradling, II, an attorney licensed to practice law in Louisiana, as well as in Oklahoma, Texas, and Massachusetts.
On August 21, 2003, the ODC filed a petition seeking respondent’s immediate interim suspension, on the ground that he is a threat of harm to the public. The ODC’s filing stemmed from three primary areas of concern, including respondent’s transfer of funds from his law firm’s client trust account to the operating account, his reported abuse of and dependency upon alcohol,[1] and his neglect of client matters. Respondent filed a response to the petition in which he denied any misconduct other than two recent “short-term” transfers made from the law firm’s trust account, which respondent suggested was equally the responsibility of his law partner.
On September 10, 2003, we ordered respondent to show cause before a hearing committee why the relief requested by the ODC should not be granted. Following a two-day hearing on October 7-8, 2003, Hearing Committee # 16 submitted its findings and recommendation to this court, in which it concluded that respondent had | {¡committed serious violations of the Rules of Professional Conduct, was a threat of harm to the public and his clients, and should be placed on interim suspension. On November 13, 2003, we accepted the committee’s recommendation and interimly suspended respondent. In re: Spradling, 03-2381 (La.11/13/03), 860 So.2d 1105.
On April 12, 2005, the ODC filed seven counts of formal charges against respondent. On August 3, 2005, the ODC supplemented and amended the formal charges to include additional (or alternative) allegations of misconduct regarding respondent’s handling of a legal matter for his client Kathi Boyd. As is discussed in further detail below, respondent has answered the formal charges and generally denied any misconduct.
FORMAL CHARGES

Count I

By way of background, in April 2001, respondent and Mark Frederick formed the Shreveport law firm of Spradling, Frederick & Associates. Respondent was the managing partner of the firm and a 60% equity owner, while Mr. Frederick owned the remaining 40% share. The partnership dissolved shortly after the August 2003 filing of the ODC’s petition seeking respondent’s immediate interim suspension.
In July 2003, the ODC received a complaint against respondent from Casie Mon-tagne, a bookkeeper formerly employed by the Spradling firm. Among other alleged misconduct, Ms. Montagne reported that on May 27, 2003, respondent transferred $14,000 from the law firm’s client trust account to the operating account. Similarly, she reported that respondent transferred $16,000 of client funds into the operating account on June 5, 2003. These funds were not replaced until June 9, 2003, *644 when respondent made a $30,000 deposit into the trust account.
lain his written response to Ms. Mon-tagne’s complaint, dated August 8, 2003, respondent represented that the two transfers were “done in error” and were merely an “oversight.” However, in his testimony at the October 2003 interim suspension hearing, respondent admitted under oath that the transfers were knowingly made and that his characterization of the transfers as an “oversight” was not candid.
The ODC alleged that respondent’s conduct violated Rules 1.15 (safekeeping property of clients or third persons), 8.1(a) (a lawyer shall not knowingly make a false statement of material fact in connection with a disciplinary matter), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.
In his answer to the formal charges, respondent denied any misconduct relating to Count I. Respondent admitted that there were two short-term transfers made from the law firm’s trust account, primarily to cover the office payroll, but he asserted that Mr. Frederick had full knowledge of the transfers. In fact, respondent stated that Mr. Frederick received approximately $9,000 of the transferred funds in order to cover his own personal financial needs. Respondent also indicated that all of the funds were replaced in the client trust account upon the funding of a bank loan obtained by the law firm. Finally, respondent admitted that he characterized the transfers as errors to the ODC “in an ill-advised effort to minimize their appearance,” but he contended that he “harbored no intent to mislead or deceive anyone regarding their impropriety.”

Count II

In February 2002, respondent was held in contempt of court and was ordered to spend 24 hours in jail for failing to attend court proceedings in a juvenile case pending in the 26th Judicial District Court for the Parish of Bossier. The ODC alleged |4that respondent’s conduct violated Rule 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.
In his answer to the formal charges, respondent admitted that he was held in contempt for failure to appear in court; however, he stated that his failure to appear “was due to a misunderstanding, not a willful failure of duty.” Respondent denied that either his failure to appear in court or the subsequent contempt ruling constituted a violation of Rule 8.4(d).

Count III

Respondent formerly operated a law office in Longview, Texas which was staffed by a Texas attorney, James Krug. In 1999, Martin Burns, a Texas resident, retained respondent to represent him in a personal injury matter. Mr. Krug filed suit on behalf of Mr. Burns in the district court of Gregg County, Texas in February 2001. He also performed some discovery in the case. In late March 2002, Mr. Krug left respondent’s firm. Respondent subsequently failed to respond to inquiries from Mr. Burns concerning the status of his case. On June 3, 2002, the Texas district court dismissed the Burns case with prejudice after respondent failed to appear in court for trial. Respondent did not inform Mr. Burns of the dismissal of the case until April 29, 2003. Moreover, in his letter of that date, respondent failed to advise Mr. Burns of his potential malpractice claim arising out of the dismissal.
The ODC alleged that respondent’s conduct violated Rules 1.4 (failure to communicate with a client), 1.7 (conflict of interest/general rule), 1.8 (conflict of interest/prohibited transactions between client *645 and lawyer), and 8.4(c) of the Rules of Professional Conduct.
|BIn his answer to the formal charges, respondent denied any misconduct relating to Count III. He asserted that it was not his fault Mr. Burns’ case was dismissed, but pointed out that the case was being reinstated primarily due to his efforts. Respondent also denied that he attempted to mislead Mr. Burns in his letter notifying him of the dismissal of his case. Finally, respondent objected to a “lack of jurisdiction over the subject matter” because the Burns case arose in Texas and suit was filed in a Texas court on behalf of a Texas resident.[2]

Count IV

On September 4, 2003, respondent filed a response in this court to the ODC’s petition for interim suspension for threat of harm to the public. In his response, respondent stated that with regard to the Burns matter (subject of Count III, supra ), he had mailed Mr. Burns a letter on July 7, 2003 — prior to the filing of the petition for interim suspension — which disclosed the possibility of liability on the part of his firm arising out of the dismissal of the personal injury case. In truth, however, the letter was postmarked on August 27, 2003, after the ODC filed the petition for interim suspension. In its report following the hearing on the interim suspension, Hearing Committee # 16 made a factual finding that the letter to Mr. Burns was not actually mailed until August 27th and that respondent’s reference to the July 7th letter was intended to be misleading.
The ODC alleged that respondent’s conduct violated Rules 3.3(a)(1) (a lawyer shall not knowingly make a false statement of material fact or law to a tribunal), 3.3(a)(4) (a lawyer shall not offer evidence that the lawyer knows to be false), 8.1(a), | fland 8.4(c) of the Rules of Professional Conduct. In his answer to the formal charges, respondent denied the allegations of Count IV.

Count V

On November 6, 2002, respondent pleaded guilty to first offense DWI. He was sentenced to serve 90 days in jail, suspended, and was placed on probation for two years with conditions, including community service and completion of a driver improvement program and a substance abuse program. Respondent met all requirements of his probation and thereafter his conviction was set aside and the prosecution dismissed pursuant to La.Code Crim. P. art. 894.
The ODC alleged that respondent’s conduct violated Rule 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer) of the Rules of Professional Conduct.
In his answer to the formal charges, respondent admitted that he pleaded guilty to DWI, but he asserted that mitigating circumstances exist.

Count VI

On May 29, 2003, Kathi Boyd retained respondent to represent her in a child custody and visitation matter. Ms. Boyd paid respondent $2,250 in legal fees,[3] plus *646 $750 for costs and expenses. On June 19, 2003, respondent appeared on Ms. Boyd’s 17behalf at a custody hearing in the 26th Judicial District Court. Respondent withdrew from the representation of Ms. Boyd after his November 2003 interim suspension; however, he failed to refund the unearned portion of the legal fee he was paid, and he failed to refund the money advanced by Ms. Boyd for costs.
The ODC later supplemented and amended the formal charges to include additional (or alternative) allegations of misconduct in the Boyd matter. First, the ODC alleged that respondent failed to deposit the $3,000 paid by Ms. Boyd in his client trust account. He also failed to respond to Ms. Boyd’s repeated demands for an accounting and itemization of the work he performed. Finally, respondent filed no pleadings during the course of the representation that required the expenditure of court costs, but he nevertheless did not refund the unused costs at the conclusion of the representation.
The ODC alleged that respondent’s conduct violated Rules 1.4, 1.5(f)(6) (failure to refund an unearned legal fee), 1.15, 8.4(c), and 8.4(d) of the Rules of Professional Conduct. In his answer to the formal charges, respondent denied any misconduct relating to Count YI.

Count VII

Jerry Rupert retained respondent’s law firm to represent him in a personal injury matter. In March 2003, respondent’s partner, Mark Frederick, negotiated a partial settlement of Mr. Rupert’s claim in the amount of $100,000. At the time the settlement was disbursed, the sum of $13,554.78 was retained in the firm’s trust account to pay LSU Medical Center, one of Mr. Rupert’s medical providers. However, respondent closed the trust account after he was placed on interim [ ssuspension in November 2003, without remitting the funds in question to the medical provider, the client, or Mr. Frederick.
The ODC alleged that respondent’s conduct violated Rules 1.15 and 1.16(d) (obligations upon termination of the representation) of the Rules of Professional Conduct.
In his answer to the formal charges, respondent denied any misconduct relating to Count VII. Respondent asserted that the funds received by Mr. Frederick and placed in the firm’s trust account were “under Frederick’s management.” Respondent denied that he converted the funds when he subsequently closed the trust account.

Hearing Committee Recommendation

Based on the evidence presented at the two-day hearing in this matter, Hearing Committee # 32 concurred in the findings of fact made by Hearing Committee # 16 following the hearing on respondent’s interim suspension. In addition, Hearing Committee # 32 made its own findings of fact, as follows:
Count I: Respondent was the managing partner of the law firm of Spradling, Frederick & Associates and was primarily responsible for the firm’s client trust account. Respondent made improper transfers from the trust account in the amount of $14,000 on May 27, 2003 and $16,000 on *647 June 5, 2003 to cover shortfalls in the firm’s operating account. The committee was unimpressed with respondent’s attempt to minimize his culpability for the transfers by blaming Mark Frederick, his former law partner, and Henry Burns, a CPA and firm’s office administrator. Likewise, the committee rejected respondent’s argument that the transfers caused no harm to any clients because he redeposited the funds in the trust account on June 9, 2003. Based |9on these factual findings, the committee determined that respondent violated Rules 1.15 and 8.4(c) of the Rules of Professional Conduct.
Count II: Respondent admitted that he failed to timely appear for the hearing in a juvenile matter pending in the 26th Judicial District Court. Respondent was found in contempt and jailed for 24 hours by order of the district judge. Respondent placed the blame for the failure not upon himself, but on his office staff for failing to properly calendar the hearing. Further, respondent was not concerned about the inconvenience his failure to appear caused the litigants, attorneys, and court staff, but maintained his failure was in the final analysis of no moment, as his appearance was only as a curator for a “non-existent” client. Based on these factual findings, the committee determined that respondent violated Rule 8.4(d) of the Rules of Professional Conduct.
Count III: Respondent admitted that his failure to act with diligence resulted in the dismissal of Martin Burns’ Texas lawsuit; however, respondent sought to minimize his own involvement by placing blame on a Texas attorney who had responsibility for the file, and further claimed his failures were mitigated by his subsequent attempts to reopen the matter. Further, respondent claimed the public reprimand and $250 fine he received from the Texas Bar Association were sufficient punishment for his failures. Based on these factual findings, the committee determined that respondent violated Rules 1.4, 1.7, 1.8, and 8.4(c) of the Rules of Professional Conduct.
Count IV: Respondent wrote a letter to Martin Burns dated July '7, 2003 disclosing the possibility of liability on the part of respondent’s law firm due to the dismissal of Mr. Burns’ case. The letter was postmarked on August 27, 2003 and was mailed after respondent was advised of the petition for interim suspension filed by the ImODC. The committee specifically found that respondent attempted to mislead the ODC and this court in this regard. Respondent admitted that he was responsible for printing and mailing the letter, but maintained that the primary cause of the initial failure to notify Mr. Burns was not due to his own actions, but was due to the failure of his secretary and office staff in failing to send the letter as he had instructed on July 7, 2003. Based on these factual findings, the committee determined that respondent violated Rules 3.3(a)(1), 3.3(a)(4), 8.1(a), and 8.4(c) of the Rules of Professional Conduct.
Count V: Respondent admitted that he pleaded guilty to DWI, which the committee determined constituted a violation of Rule 8.4(b) of the Rules of Professional Conduct.
Count VI: Kathi Boyd contacted respondent in May 2003 to obtain legal services related to issues of child support and visitation. Respondent failed to give Ms. Boyd’s legal matter proper attention and diligence. He failed to file appropriate pleadings, despite the instructions of his client, and failed to pursue the goals of the client.
Respondent prepared and obtained Ms. Boyd’s signature on a fee agreement which was designed to be a “minimum fee contract” yet which provided for hourly bills. The minimum fee paid by Ms. Boyd was *648 placed in respondent’s operating account, rather than his trust account. Respondent also obtained $750 from Ms. Boyd for costs; however, respondent failed to provide an accounting for sums he claimed to have expended for costs and failed to refund to the client the unused portion of the costs. Further, respondent retained the excess amount tendered as “costs” as an additional fee. When questioned as to his failure to account for the unused funds, respondent claimed he “didn’t realize” he was required to account for the funds or to [^refund the difference. After the formal hearing, respondent refunded $160.25 to Ms. Boyd for charges for paralegal services. Based on these factual findings, the committee determined that respondent violated Rules 1.5(f)(6) and 8.4(c) of the Rules of Professional Conduct.
Count VII: Respondent admitted that he was the managing partner of the law, firm of Spradling, Frederick & Associates and was primarily responsible for the firm’s trust account which held $13,554.78 in escrow to pay the medical lien for a client, Jerry Rupert., These funds were obtained from the settlement of Mr. Rupert’s personal injury claim. The medical lien was disputed but was later determined to be due and owing to LSU Medical Center. Due to the action/failure of respondent, the funds disappeared. Respondent is unable to account for the funds. The lien was subsequently paid with funds recovered by Mr. Frederick on a successful UM claim for Mr. Rupert. Mr. Rupert has not been reimbursed for the funds. Respondent claims he was never advised by Mr. Frederick that the funds were in the trust account pending the determination of the validity of the medical lien. Respondent denies conversion of the funds, but acknowledges his responsibility for his “virile share” of the loss. Respondent has taken no actions whatsoever to begin repayment of the money, maintaining the case was “not his responsibility.” Based on these factual findings, the committee determined that respondent violated Rules 1.15 and 1.16(d) of the Rules of Professional Conduct.
The committee also made factual findings which are not specifically related to the formal charges, as follows:
• Respondent stated that he has “absolutely no doubt he is seriously alcohol dependent” and stated that he has consumed no alcohol since August 8, 2003. He presents a large amount of credible written evidence as verification, | ^together with his active participation in Alcoholics Anonymous and the Lawyers Assistance Program.
• While respondent admitted “major mistakes,” he was very quick to place most of the blame for all of “his” failures on his law partner, financial assistant, secretaries, staff, and former clients.
• Mark Frederick, respondent’s former law partner, and Kathi Boyd, respondent’s former client, were found to be very credible, while respondent’s testimony was determined to be seriously lacking in candor and credibility.
• There is a pattern of misuse of the law firm’s trust account by respondent, and he had in fact and by admission advanced funds from the trust account to litigants for living expenses.[4]
*649 • As a factor in mitigation, respondent has a strong supportive spouse and family, who have continued to support respondent during the period of his interim suspension. Respondent is qualified to practice law in the states of Louisiana, Texas, Oklahoma, and Massachusetts. Respondent has not been able to find employment until recently, but based upon his education and experience, has been determined by a number of governmental agencies to be “best qualified” for employment, absent his suspension from the practice of law.
• In aggravation, respondent has demonstrated a pattern of misusing his trust account; has failed to acknowledge the wrongful nature of his conduct (converting money advanced for costs and expenses by Ms. Boyd and | ^converting $13,554.78 belonging to Mr. Rupert; failing to acknowledge the wrongful nature of his conduct in testimony when given the opportunity; failing to repay funds during the past 24 months); lacks remorse for his dishonesty; and demonstrated an uncooperative attitude during the proceedings.
The committee found that respondent violated duties owed to his clients, the public, the legal system, and as a professional. Respondent’s actions were knowing and intentional; only rarely can his actions be deemed negligent.
Considering the issue of an appropriate sanction, the committee observed:
... The Committee was impressed Respondent has taken large steps toward dealing with a serious alcohol problem, and understands the necessity to continue the program to avoid a relapse. The Committee was impressed with the devotion of Respondent’s spouse and her diligent and devoted efforts to assist in Respondent’s rehabilitation. While Respondent now takes the position alcoholism was a major contributor to the violations of the Professional Rules, the Hearing Committee is of the opinion such a mitigating factor is not so great as to overcome the serious, continuing, pattern of misconduct. In fact, alcohol played no part in Respondent’s behavior since August 2003. Respondent did not/ was not able to engage in employment from the time of his suspension up to approximately six months prior to the hearing.
The Hearing Committee believes the aggravating factors enumerated herein far outweigh the mitigating factors. Moreover, the Committee finds as a fact Respondent cannot be trusted in a fiduciary capacity. Thus, the aggravating factors outweigh the factor of Respondent’s efforts at rehabilitation from alcoholism.
... The Committee concludes alcohol was not the primary factor in the misconduct of Respondent. Respondent testified he ceased consuming alcohol on August 8, 2003. He sent the letter postmarked August 27, 2003 (and dated July 7, 2003) to Mr. [Burns]. In the opinion of the Committee the primary factor in the pattern of continuing misconduct were character flaws that were continually evidenced in the actions of the Respondent after his heavy consumption of alcohol had ceased. This finding is 114buttressed by repeated acts of conversion of funds, the failure to acknowledge responsibility for past actions, and the *650 failure since August of 2003 to make any attempt toward repayment of the loss, which caused, and continues to cause substantial harm. The Committee viewed the actions of Respondent, taken as a whole, as meeting the criteria of Supreme Court Rule 19, Appendix E, Guideline # 1 [repeated or. multiple instances of intentional conversion of client funds with substantial harm].
The nature of the multiple charges and findings of fact, together with the pattern of Respondent in abusing trust/financial accounts with which he was entrusted, indicates Respondent has serious and continuing flaws in judgment and character. In the opinion of the Committee, if the Respondent' is allowed to continue the practice of law, and to exercise the responsibilities of an attorney, absent further monumental change (in attitude, professional practices and ethics), he will continue to present a clear danger to clients, the public, the legal system and the legal profession.
Based on this reasoning, the hearing committee recommended that respondent be permanently disbarred.
In response to the hearing committee’s report, the ODC agreed that permanent disbarment is an appropriate sanction, but suggested that the committee should have relied upon Guideline 2 of the permanent disbarment guidelines (intentional corruption of the judicial process, including but not limited to bribery, perjury, and subornation of perjury) rather than Guideline l.[5] On the other hand, respondent filed an objection to nearly the entirety of the hearing committee’s report, including its factual findings, application of the Rules of Professional Conduct, and recommended sanction. Respondent admitted that he should be disciplined for his misconduct, | isincluding conversion of client funds and his DWI, but argued that he should not be permanently disbarred. Rather, respondent suggested that he should be suspended from the practice of law for a period of two to three years, with his reinstatement conditioned upon his continued sobriety.

Disciplinary Board Recommendation

The disciplinary board accepted the hearing committee’s factual findings and agreed that the committee properly applied the Rules of Professional Conduct, with the exception of the committee’s conclusion that respondent violated Rule 1.5(f) in connection with Count VI, the Boyd matter. The committee reasoned that respondent erred in failing to deposit the minimum fee paid by Ms. Boyd in his trust account; however, the board pointed out that Rule 1.5(f)(2) allows a lawyer to place a minimum fee into his operating account. The board did find that respondent violated Rule 1.5(f)(6) relative to fee disputes, because he failed to pursue the goals of the client and therefore unearned fees should have been due to Ms. Boyd. Respondent placed no funds in trust; rather, he kept the entire fee, and further, failed to account for or refund unearned costs.
*651 The board determined that respondent violated duties owed to his clients, to the public, to the legal system, and as a professional. The board agreed with the committee that respondent acted intentionally in some instances, knowingly in others, and only rarely acted negligently. Regarding injury, the board found that respondent’s misappropriation of client funds created the potential for great harm. His failure to make any attempt to refund unearned fees and unused costs to Ms. Boyd and to repay the funds owed to Mr. Rupert continues to cause harm. By his attempts to mislead the ODC and this court, respondent engaged in a serious ethical breach |1fithat directly affects the lawyer disciplinary system and the administration of justice. Respondent’s DWI conviction reflects badly on his trustworthiness and fitness to practice law, as does his citation for contempt for failing to make appearances in court. Considering these circumstances and the ABA’s Standards for Imposing Lawyer Sanctions, the board determined that the baseline sanction for respondent’s misconduct is disbarment.
As aggravating factors, the board recognized the following: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, submission of false evidence, false statements, or other deceptive practices during the disciplinary process, refusal to acknowledge the wrongful nature of the conduct, and indifference to making restitution. In mitigation, the board recognized the mitigating factor of personal or emotional problems related to respondent’s problems with alcohol; however, the board agreed with the committee’s assessment that the evidence fails to establish a causal link between respondent’s misconduct and his alcohol abuse.
Considering the multiple instances of conversion of client funds, but also respondent’s dishonest and fraudulent attempts to disguise wrongdoing, and the numerous aggravating factors, the board concluded that permanent disbarment is appropriate under Guidelines 1 and 2 of the permanent disbarment guidelines. The record shows that respondent converted approximately $45,000. Though the conversion in Count I was of a short duration, respondent has yet to repay Mr. Rupert and Ms. Boyd the more than $13,000 he has owed them since 2003. Respondent also created a backdated letter in an attempt to hide his earlier failure to notify his client of possible malpractice on the part of his firm. Such conduct was an intentional 117attempt by respondent to mislead the ODC and the court, as was respondent’s disingenuous explanation for the funds transfer in Count I (that the transfer was an “oversight”).
Based on this reasoning, the board recommended that respondent be permanently disbarred. The board further recommended that respondent be ordered to make restitution to Jerry Rupert and Ka-thi Boyd, and that he be assessed with all costs and expenses of these proceedings.
Respondent filed an objection to the disciplinary board’s recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana *652 State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992).
Respondent has filed a lengthy brief in this court in which he takes issue with nearly all of the findings which have been made by the hearing committee and the disciplinary board. These arguments must fail in light of the committee’s specific finding that “The testimony of Respondent was determined to be seriously lacking in candor and credibility.” The credibility factor was particularly important in the committee’s determination that respondent was solely responsible for the two transfers made from the law firm’s trust account to the operating account (Count I) and that respondent attempted to mislead the ODC and this court when he testified | ^concerning the July 7, 2003 letter to Martin Burns, which letter was not actually mailed until August 27, 2003, after the ODC filed its petition for interim suspension (Count IV). The committee’s findings turned in large measure on the credibility determinations it made after hearing respondent and the various witnesses testify. In disciplinary matters where credibility determinations are central to the determination of misconduct, we have rarely rejected the factual findings of the committee, observing that the committee members are “in a superior position to observe the nuances of demeanor evidence not revealed in a record” and that they “.act as the eyes and ears of this court.” In re: Bolton, 02-0257 (La.6/21/02), 820 So.2d 548. Therefore, we cannot say the hearing committee was clearly wrong when it determined, based on its credibility findings, that respondent committed the misconduct alleged in the formal charges.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
While not minimizing respondent’s other misconduct, clearly the most egregious conduct is his conversion of client funds and his submission of false evidence in this disciplinary proceeding. In In re: Harris, 03-0212 (La.5/9/03), 847 So.2d 1185, we permanently disbarred a lawyer who manufactured evidence and | iapresented perjured testimony during his disciplinary proceeding. Similarly, respondent in the instant case falsely claimed that he had notified his client of his potential malpractice liability in a letter of July 7, 2003. The hearing committee made a factual finding that this letter was not actually mailed until August 27, 2003, and that respondent had attempted to mislead the committee and this court by referencing the letter of July 7th. Moreover, it is disturbing to note that respondent lied to the ODC in his response to the complaint filed against him by his former bookkeeper, unequivocally stating that two transfers from the law firm’s trust account were made, in error and were merely an oversight. As respondent was later forced to admit, these characterizations were absolutely false.
In mitigation, respondent claims that his judgment was impaired by alcohol during the time period in which all of his misconduct occurred. Indeed, respondent’s abuse of alcohol was a primary issue of *653 concern to the hearing committee which considered whether he should be placed on interim suspension. Nevertheless, following the hearing on the formal charges, Hearing Committee #32 was not convinced that alcohol abuse was a major contributor to respondent’s misconduct. The disciplinary board accepted this finding, noting that respondent engaged in misconduct even after he stopped drinking on August 8, 2003. We agree that this finding is supported by the record, as respondent sent the letter to Martin Burns on August 27, 2003, but dated July 7, 2003, in an attempt to conceal his earlier misconduct.
The applicable aggravating factors include the following: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law (admitted in Louisiana in 1993). We also note that respondent has a prior disciplinary | 2nrecord arising out of a complaint filed against him alleging that he neglected a legal matter. In 1999, the complaint was referred by the ODC to the diversion program, which respondent successfully completed. The diversion matter is considered to be an aggravating factor in this ease. See Supreme Court Rule XIX, § 10(A)(9); In re: LeBlanc, 04-0681, n. 5 (La.10/14/04), 884 So.2d 552.
Respondent’s submission of false evidence in this matter, coupled with his intentional conversion of client funds, indicates he lacks the requisite honesty and integrity to practice law. Accordingly, respondent must be permanently disbarred.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that the name of James Wallace Spradling, II, Louisiana Bar Roll No. 22161, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
CALOGERO, C.J., concurs in part and dissents in part.
KNOLL, J., dissents and would impose disbarment only.

. Respondent has a long history of alcohol abuse dating back to approximately 1980. He stopped drinking for several months after his 2002 DWI arrest (see Count V, infra), but he resumed drinking thereafter and continued to drink until August 8, 2003, when the investigation of this matter commenced. In November 2003, respondent signed a two-year recovery agreement with the Lawyers Assistance Program; however, it is unclear from the record whether the agreement is still in effect.

. On December 1, 2004, respondent was publicly reprimanded in Texas for neglecting the Burns legal matter and for failing to communicate with Mr. Burns, in violation of Rules 1.01(b)(1) and 1.03(a) of the Texas Disciplinary Rules of Professional Conduct. Respondent was also ordered to pay $250 in attorney’s fees to the Chief Disciplinary Counsel for the State Bar of Texas. Respondent did not notify the ODC of the Texas disciplinary proceeding.

. The retainer agreement signed by Ms. Boyd provided that the $2,250 fee was a "minimum fee”:
*646 I the undersigned client, retain and employ SPRADLING, FREDERICK & ASSOCIATES to render legal advice and services in connection with divorce, child custody and property and such other matters as I later request attorney to [handle] and attorney accepts.
Fee: The minimum attorney fee in this matter is $2,250.00.
Services in addition to those described above, if necessary, will be charged at ... an hourly rate not less than $75.00 PER HOUR.

. Respondent did indeed acknowledge that a living expense advance to a client was inadvertently made from the trust account; however, because respondent has not been charged with such misconduct here, it cannot be considered. See In re: Nevitte, 02-1962 (La.9/30/02), 827 So.2d 1135 ("... [w]e find the hearing committee erred in finding respondent guilty of ethical violations based on the uncharged conduct. Accordingly, we will not consider the uncharged conduct and will make no further reference to it in this opin *649 ion. Rather, we confine our opinion to the charged misconduct relating to respondent's criminal conviction.”).

. The ODC conceded that "the evidence of conversion in this case does not warrant permanent disbarment under Guideline 1.” By way of explanation, the ODC pointed out that respondent's conversion of $30,000 in Count I was intentional but did not cause substantial harm to any clients or third parties. Conversely, respondent’s conversion of $13,000 from Jerry Rupert in Count VII caused substantial harm but cannot reasonably be said to have been intentional. Accordingly, the ODC suggested that the committee erred in relying on Guideline 1, and that it should have relied instead on Guideline 2, based upon respondent’s submission of false and fabricated evidence in this disciplinary proceeding.