943 So.2d 341 (2006)
In re Eddie Douglas AUSTIN, Jr.
No. 2006-B-0630.
Supreme Court of Louisiana.
November 29, 2006.
*342 Charles B. Plattsmier, Bernadine Johnson, Baton Rouge, for Applicant.
The Law Offices of James E. Boren, James E. Boren, Baton Rouge, John Green, Eddie D. Austin, Jr., Lake Charles, for Respondent.

ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Eddie Douglas Austin, Jr., an attorney licensed to practice law in Louisiana.

*343 UNDERLYING FACTS
Prior to attending law school, respondent worked as a stockbroker for approximately twelve years. After being admitted to the bar in 1990, respondent set up his law practice in Lake Charles.
In late 1996, another attorney, Lawrence Babineaux, began practicing law out of respondent's office. Although the exact nature of the relationship between respondent and Mr. Babineaux was never reduced to writing, it appears Mr. Babineaux was largely responsible for organizing and operating respondent's personal injury business. Respondent paid Mr. Babineaux the sum of $2,000 per month for this work.[1] Mr. Babineaux also had his own clients. In lieu of paying rent to respondent, Mr. Babineaux agreed to pay respondent one-half of all attorney's fees he derived from his own clients. Mr. Babineaux did not have a client trust account and therefore used respondent's client trust account for all cases he brought to the firm during the period of his association with respondent.
In early 1997, Mr. Babineaux began representing Annie Laura Hutto. Ms. Hutto, an elderly woman who was a long time friend of Mr. Babineaux's family, retained Mr. Babineaux to assist her in collecting a substantial inheritance from a relative in Texas. Between February 17, 1997 and March 17, 1997, Mr. Babineaux received sums totaling $338,535.36 on Ms. Hutto's behalf, all of which he deposited into respondent's trust account. Mr. Babineaux and Ms. Hutto did not enter into a written fee agreement in connection with the representation; however, Mr. Babineaux billed Ms. Hutto a total of $7,917.50 in hourly fees, which he in turn split with respondent pursuant to their office-sharing arrangement.
During her consultations with Mr. Babineaux, Ms. Hutto expressed a desire to earn a greater return on her funds than the minimal interest paid on bank deposits. She also requested Mr. Babineaux's assistance in preserving and protecting the funds for her five adult children.[2]
Because of respondent's background as a stockbroker, Mr. Babineaux approached him about Ms. Hutto's concerns and financial needs. Respondent suggested to Mr. Babineaux that under certain conditions he would be able to guarantee a return of 10% on Ms. Hutto's investment, while still providing for her monthly needs and those of her children. Later, respondent met with Mr. Babineaux and Ms. Hutto to discuss this matter. Respondent and Ms. Hutto agreed that respondent would retain a portion of Ms. Hutto's funds and would pay Ms. Hutto $2,000 per month, along with payments of $500 per month to each of her children, with interest at a rate of 10%. However, this agreement was never reduced to writing.
On January 1, 1998, Mr. Babineaux began working part-time for the Calcasieu Parish District Attorney's Office. Mr. Babineaux left respondent's office in March 1998 to accept a full-time position with the district attorney.
In May 1998, Ms. Hutto retained Lake Charles attorney Evelyn Oubre to represent her. Shortly thereafter, Ms. Oubre, on behalf of Ms. Hutto, terminated respondent's services and requested an accounting *344 of the distribution and handling of Ms. Hutto's funds. On July 14, 1998, Mr. Babineaux paid Ms. Oubre $5,000 in cash and agreed to cooperate in any action against respondent in exchange for a release of liability from Ms. Hutto. On July 17, 1998, Ms. Oubre filed a civil suit against respondent on behalf of Ms. Hutto, seeking an accounting and the production of all documents in his possession concerning Ms. Hutto. Annie Laura Hutto v. Eddie Austin, Jr., No. 98-4094 on the docket of the 14th Judicial District Court for the Parish of Calcasieu. On the same day, the trial court issued a temporary restraining order preventing respondent from "encumbering, alienating, destroying, damaging, wasting, secreting, or disposing of any property owned by" Ms. Hutto.
In the course of the civil suit, an issue was raised regarding the existence of an attorney-client relationship between respondent and Ms. Hutto. Respondent denied that he was ever Ms. Hutto's attorney. On July 30, 1998, Ms. Hutto gave sworn testimony in open court in which she denied that respondent acted as her attorney:
Q. Ms. Hutto, in the year of 1996, 1997, 1998, was Mr. Eddie Austin your attorney?
A. Well, no, Lawrence Babineaux was my attorney, but EddieEddie Austin gaveI mean, Lawrence gave Eddie Austin my money.
In a deposition taken on September 23, 1998, Ms. Hutto was asked whether respondent "ever handle[d] any legal cases" for her. Ms. Hutto replied, "No, I've only seen him three times, well, counting the other day in court."
On November 30, 2001, the civil suit was settled. Among other stipulations, the parties agreed as follows:
. . . Annie Laura Hutto received a total of $338,535.36 from the estate of Pete Martin. That said funds were given to Eddie Austin, Jr. for Eddie Austin, Jr. to invest and to disburse back to Annie Laura Hutto as requested by Annie Laura Hutto.
. . . Eddie Austin, Jr. did validly and legally disburse the total sum of $153,589.23 of Annie Laura Hutto's monies.
. . . Eddie Austin, Jr. shall reimburse Annie Laura Hutto for all attorney's fees, expenses, and court costs expended in the prosecution of this action. This sum is $4,000.00.
. . . Eddie Austin, Jr. does owe to Annie Laura Hutto the total sum of $188,946.13. This figure shall be paid as follows:
1. $75,000 by cashier's check paid simultaneously with Eddie Austin, Jr. signing this document;
2. The remaining sum of $113,946.13 shall be paid at the rate of $4,000.00/month, plus 10% interest from the date of judicial demand (July 17, 1998). . . .
Ms. Hutto dismissed her civil suit without prejudice in January 2002. In June 2004, Ms. Hutto died at the age of 80.

DISCIPLINARY PROCEEDINGS

Complaint by Ms. Hutto
In August 2000, while the civil suit was still pending, Ms. Hutto filed a complaint against respondent with the ODC, stating that respondent "was recommended by my lawyer, Lawrence Babineaux, as a broker and he spent it. About $221,000." In his response to the complaint, respondent denied that he had an attorney-client relationship with Ms. Hutto. Respondent also stated that Ms. Hutto had agreed to lend him the funds she received from her inheritance, which loan respondent would repay as follows: (1) respondent agreed to pay *345 Ms. Hutto a minimum of 10% and a maximum of 12% on her money; (2) respondent would pay Ms. Hutto $2,000 per month, and would pay each of her five children $500 per month until each one had received $10,000; (3) respondent would, with reasonable notice, advance money to Ms. Hutto "for things that she might desire that could not be paid out of the $2,000.00 per month," such as improvements to her home; and (4) respondent could lend the money out or invest the money as he saw fit, at his risk.

Formal Charges
After investigation, the ODC filed one count of formal charges against respondent, alleging that his conduct constituted a violation of Rules 1.8(a) (prohibited business transactions between a lawyer and client), 1.14 (client under a disability), 1.15(a)(b)(c) (safekeeping property of clients or third persons), 2.1 (a lawyer shall exercise independent professional judgment in representing a client), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.
Respondent answered the formal charges and denied any misconduct. Among other contentions, respondent denied that he had an attorney-client relationship with Ms. Hutto or that he performed any legal work on her behalf.

Formal Hearing
Prior to the hearing, respondent and the ODC entered into a joint stipulation of facts, including a stipulation that respondent has made all payments called for under the settlement agreement with Ms. Hutto, and as a result, he is no longer indebted financially to Ms. Hutto or her heirs in any way. The parties also stipulated to the admission of numerous exhibits.
The ODC called no witnesses at the hearing. Respondent testified on his own behalf and on cross-examination by the ODC. He also presented the live testimony of Mr. Babineaux.

Hearing Committee Recommendation
Following the hearing, the hearing committee filed its report recommending that the formal charges against respondent be dismissed. In reaching this conclusion, the committee made a factual finding that the ODC failed to present clear and convincing evidence establishing that an attorney-client relationship existed between respondent and Ms. Hutto. The committee relied on Mr. Babineaux's testimony that he (Babineaux) was Ms. Hutto's attorney and that she always understood him to be her lawyer. It further noted that respondent testified that he never rendered any legal advice to Ms. Hutto, never agreed to be her lawyer, and never established an attorney-client relationship with her. Rather, respondent only acknowledged that he had a business relationship with Ms. Hutto that involved investing and managing certain funds. According to the committee, the ODC failed to effectively rebut this testimony and failed to put forth sufficient facts to establish by clear and convincing evidence that respondent was Ms. Hutto's lawyer.[3]
The committee acknowledged this court's prior jurisprudence holding that the existence of an attorney-client relationship turns largely on the client's subjective belief that it exists. In re: LeBlanc, 04-0681 (La.10/14/04), 884 So.2d 552; Louisiana *346 State Bar Ass'n v. Bosworth, 481 So.2d 567 (La.1986). In the instant case, however, the committee could find nothing to suggest that Ms. Hutto had a subjective belief that respondent was her attorney:
Hutto testified at a hearing in the 14th Judicial District Court and failed to state that [respondent] was her lawyer. In a deposition, Ms. Hutto did not consider Respondent to be her lawyer. In her complaint, Ms. Hutto failed to list Respondent as her lawyer. While there may be circumstantial evidence suggesting the existence of an attorney client relationship and while there can be speculation about how Ms. Hutto may have testified at the hearing had she not died, the simple, direct facts before the Committee showed that she had no "subjective belief" that Respondent was her lawyer. Circumstantial proof and speculation controverted by directed testimony and direct evidence cannot rise to the level of clear and convincing.
Having found no attorney-client relationship, the committee reasoned there could be no violation by respondent of Rules 1.8(a), 1.14, 1.15, or 2.1 of the Rules of Professional Conduct.
The committee also found no violation of Rules 8.4(a) or 8.4(c), noting that the ODC did not allege, nor did the evidence show, that respondent engaged in theft or fraud. While the committee observed that respondent could have reduced his agreement with Ms. Hutto to writing, it found there was no evidence presented which proved that his failure to do so was dishonest or deceitful. To the contrary, the committee found respondent invested the money and made payments to Ms. Hutto with interest, and there was no harm to Ms. Hutto. As to Rule 8.4(a), the formal charges do not allege that respondent assisted or helped Mr. Babineaux to violate the Rules of Professional Conduct, and no such evidence was presented.
Based on this reasoning, the committee determined that the ODC failed to prove by clear and convincing evidence that respondent violated the Rules of Professional Conduct. Accordingly, the committee recommended that the formal charges be dismissed.
The ODC objected to the hearing committee's report and recommendation "as inconsistent with the facts and evidence."

Disciplinary Board Recommendation
The disciplinary board rejected the hearing committee's finding that no attorney-client relationship existed between respondent and Ms. Hutto. Rather, relying on the "objective facts," the board concluded respondent was Ms. Hutto's attorney.[4]
Having found an attorney-client relationship, the board determined that respondent violated Rule 1.8(a) by engaging in a business transaction with a client without complying with the safeguards set forth in the rule. It also concluded respondent violated Rule 1.15 when he withdrew Ms. Hutto's funds from his trust account without notifying her or providing her with any sort of documentation, promissory note, or receipt for the funds. Finally, by exploiting the representation by entering into a business transaction with a client without offering the appropriate safeguards, respondent failed to exercise independent professional judgment in violation of Rule 2.1. However, like the hearing committee, the board found no violation *347 of Rule 1.14, pertaining to a client under a disability, or of Rule 8.4(c).[5]
The board determined the applicable baseline sanction is suspension. In aggravation, the board recognized that Ms. Hutto, an elderly and unsophisticated woman, was a vulnerable victim. In mitigation, the board found that respondent has no prior disciplinary record and lacked a dishonest or selfish motive. It also noted Ms. Hutto suffered no harm as a result of respondent's conduct, since it was stipulated that Ms. Hutto or her heirs have been fully repaid.
Based on these factors, the board recommended that respondent be suspended from the practice of law for one year. The board further recommended that respondent be assessed with all costs and expenses of these proceedings.
Both respondent and the ODC filed objections to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The crucial issue in this case is whether an attorney-client relationship existed between respondent and Ms. Hutto. The RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 14 (2000) provides some guidance in determining when an attorney-client relationship arises. That section provides, in pertinent part:
A relationship of client and lawyer arises when:
(1) a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; and either
(a) the lawyer manifests to the person consent to do so; or
(b) the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services. . . .
Applying this test to the instant case, we find the undisputed facts establish that Ms. Hutto did not manifest an intent that respondent provide legal services for her. To the contrary, Ms. Hutto's testimony, taken in connection with the earlier civil proceedings, reveals that Ms. Hutto twice denied under oath that respondent was her attorney or that he "ever handle[d] any legal cases" for her. Rather, Ms. Hutto steadfastly indicated her attorney was Mr. Babineaux.[6]
*348 Moreover, even assuming arguendo that Ms. Hutto could have believed respondent was her attorney, there is nothing in the record to indicate respondent consented to perform legal services for her or that he had a reasonable basis to believe that she was relying on him for such services. The testimony of respondent and Mr. Babineaux, both of whom were found to be credible witnesses by the hearing committee, establishes that respondent contracted with Ms. Hutto to perform investment services for her. Obviously, performing investment services does not constitute the practice of law, as these services are typically offered by non-attorneys such as stockbrokers or investment consultants.
In reaching this conclusion, we recognize there can be a potential for confusion when an attorney wears a multitude of hats. To protect the client, this court has given great deference to the client's subjective belief whether an attorney-client relationship exists. See LeBlanc and Bosworth, supra. Nonetheless, the overarching question is whether there is a reasonable, objective basis to determine that an attorney-client relationship has formed. See Sheinkopf v. Stone, 927 F.2d 1259 (1st Cir.1991).[7] In the instant case, the client's subjective belief and the objective facts unite to form one inescapable conclusion: no attorney-client relationship ever existed between respondent and Ms. Hutto.[8]
Having made this finding, we conclude the ODC has failed to prove by clear and convincing evidence that respondent violated Rules 1.8(a), 1.14, 1.15(a)(b)(c) and 2.1. The existence of an attorney-client relationship is a prerequisite for proving a violation of these rules. Because the ODC has not proven an attorney-client relationship, there can be no violation of these rules.
The remaining charges, alleging violations of Rule 8.4(a) and 8.4(c), do not necessarily hinge on the existence of an attorney-client relationship. Nonetheless, we do not find the ODC has demonstrated by clear and convincing evidence that respondent violated these provisions.
Rule 8.4(a) prohibits an attorney from violating the Rules of Professional Conduct, knowingly assisting or inducing *349 another to do so, or violating the rules through the acts of another. While Mr. Babineaux may have committed professional violations in the course of his representation of Ms. Hutto,[9] there is no evidence that respondent induced him to commit these violations or that respondent acted through Mr. Babineaux to violate the rules. To the contrary, the evidence indicates Mr. Babineaux's representation of Ms. Hutto was largely completed at the time he approached respondent regarding investment of the inheritance proceeds. Thus, we find no violation of Rule 8.4(a).
Rule 8.4(c) prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation. In declining to find a violation of this rule, the committee found there was no evidence indicating respondent's dealings with Ms. Hutto were dishonest or deceitful, or that he engaged in fraud and misrepresentation. Instead, the committee found the evidence supported the conclusion that respondent invested the funds and made payments to Ms. Hutto with interest, as he promised. Additionally, the committee found there was no harm to Ms. Hutto, because she and her heirs lost no money as a result of respondent's actions. Based on our review of the record, we cannot say the hearing committee's factual findings are clearly wrong. Accordingly, we find no violation of Rule 8.4(c).
In making these findings, we do not mean to condone respondent's actions in this case. As a person trained in the law, respondent should have realized that entering into an unwritten investment arrangement with an unsophisticated person involving a substantial sum of money was a transaction fraught with danger. Although we do not find respondent acted dishonestly under the evidence presented, the potential for mischief under such a nebulous agreement is obvious. We take this opportunity to caution respondent, as well all other members of the bar, to be especially vigilant in dealing with the public to avoid the possibility of harm, even when acting outside of the role as attorney.
In summary, we conclude that based on the record before us, the ODC has failed to prove by clear and convincing evidence that respondent violated the Rules of Professional Conduct as charged. Accordingly, we must dismiss the charges against respondent.

DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that the formal charges against respondent, Eddie Douglas Austin, Jr., be and hereby are dismissed.
JOHNSON, TRAYLOR and KNOLL, JJ., dissent.
NOTES
[1] Respondent did not withhold Social Security or state or federal taxes from the monthly payments to Mr. Babineaux; he issued a Form 1099 for tax reporting purposes. Respondent did pay Mr. Babineaux's life and health insurance premiums.
[2] Ms. Hutto had previously received an inheritance that she spent in relatively short order; therefore, she wanted to make sure that did not happen again.
[3] The committee acknowledged that Ms. Hutto had died by the time of the hearing, but noted that the ODC failed to take her sworn statement prior to her death when it "had both the opportunity and time to do so."
[4] The board recognized the "subjective belief" standard enunciated in Bosworth, supra, but noted that the existence of an attorney-client relationship does not turn solely on the subjective belief of the client. In the instant matter, the board found "the objective facts and law establish an attorney-client relationship."
[5] The board noted that although Ms. Hutto was elderly and unsophisticated, it was not proven that she was disabled. Therefore, Rule 1.14 is not implicated. The board also found no evidence of dishonesty, fraud, deceit, or misrepresentation in respondent's business and investment relationship with Ms. Hutto, and accordingly, found no violation of Rule 8.4(c).
[6] Indeed, even in her complaint to the ODC, Ms. Hutto did not characterize respondent as her lawyer. Rather, she indicated that respondent "was recommended by my lawyer, Lawrence Babineaux, as a broker. . . ." [emphasis added]
[7] In Sheinkopf, the court stated:

Human beings routinely wear a multitude of hats. The fact that a person is a lawyer, or a physician, or a plumber, or a lion-tamer, does not mean that every relationship he undertakes is, or can reasonably be perceived as being, in his professional capacity. Lawyers/ physicians/ plumbers/ lion-tamers sometimes act as husbands, or wives, or fathers, or daughters, or sports fans, or investors, or businessmen. The list is nearly infinite. To imply an attorney-client relationship, therefore, the law requires more than an individual's subjective, unspoken belief that the person with whom he is dealing, who happens to be a lawyer, has become his lawyer. If any such belief is to form a foundation for the implication of a relationship of trust and confidence, it must be objectively reasonable under the totality of the circumstances. We agree with the court below that this threshold was not crossed in the instant case. [emphasis in original]
[8] In argument before this court, the ODC placed great emphasis on the fact that respondent, pursuant to his arrangement with Mr. Babineaux, received a portion of the fees collected by Mr. Babineaux from Ms. Hutto. To the extent the arrangement between respondent and Mr. Babineaux could be viewed as a division of fees between attorneys who are not in the same firm, it might be argued that respondent violated Rule 1.5(e) by taking a fee without providing legal services to Ms. Hutto. However, the ODC did not allege nor prove a violation of Rule 1.5(e) and we therefore express no opinion as to this issue.
[9] In a separate opinion rendered this day, we have accepted a joint petition for consent discipline proposed by Mr. Babineaux and the ODC.