STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-1184

JANE DOE

VERSUS

SCOTT M. HAWKINS, ET AL.

************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2008-1156
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

************

DAVID E. CHATELAIN[*]
JUDGE

************

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, James T. Genovese, Shannon J. Gremillion, and David E. Chatelain, Judges.

Gremillion, J., dissents and assigns written reasons.

REVERSED AND REMANDED.

John R. Shea
John Shea & Associates
1817 West University Avenue
Lafayette, Louisiana 70506
(337) 981-7432
Counsel for Plaintiff/Appellant:
    Jane Doe

Robin Rhodes
Attorney at Law
305 Brunswick Place
Lafayette, Louisiana 70506
(337) 984-5068
Counsel for Plaintiff/Appellant:
    Jane Doe

---

[*]Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Staci Knox Villemarette**
**Attorney at Law**
**Post Office Box 53951**
**Lafayette, Louisiana 70505-3951**
**(337) 289-6906**
**Counsel for Defendant/Appellee:**
        **Hawkins & Villemarette, L.L.C.**

**Chris P. Villemarette**
**Marikatherine Sonnier**
**Attorneys at Law**
**3404 Moss Street**
**Lafayette, Louisiana 70507**
**(337) 232-3100**
**Counsel for Defendant/Appellee:**
        **Hawkins & Villemarette, L.L.C.**

**Walter K. Jamison, III**
**Kraft Gatz Lane Benjamin, L.L.C.**
**600 Jefferson Street, Suite 410**
**Lafayette, Louisiana 70501**
**(337) 706-1818**
**Counsel for Defendant/Appellee:**
        **Hawkins & Villemarette, L.L.C.**

**CHATELAIN, Judge.**

In this tort case, the plaintiff, a law firm clerical employee, alleging that a lawyer-member of the law firm assaulted and raped her on the firm's premises after business hours, seeks to hold a two-person limited liability law firm liable. Finding that the plaintiff cannot establish the law firm[1] owed her an independent duty in its capacity as her employer to protect her from the injury at issue, the trial court granted summary judgment in favor of the law firm. The plaintiff now appeals. We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

On March 9, 2007, Hawkins & Villemarette, L.L.C., a Lafayette law firm (hereafter the firm), employed J.K.[2] (hereafter the plaintiff) as a receptionist. The only members of the firm were Scott M. Hawkins (hereafter Hawkins) and Chris P. Villemarette (hereafter Villemarette).

The plaintiff claims that on the evening of March 9, 2007, a Friday, Hawkins, a member, owner, and officer of the firm, assaulted and raped her after business hours on the firm's premises. She testified that she felt Hawkins on top of her before she saw him on top. She felt his penis pulling out of her vagina and semen dripping onto her body. She then looked at Hawkins, and he was performing oral sex on her. At that point, the plaintiff stated that she pushed Hawkins off of her and started to panic. Hawkins then telephoned the plaintiff's boyfriend, David White, who had been at the firm earlier but was no longer there, and asked him to pick up the plaintiff.

_____

[1]The plaintiff's lawsuit against the individual member of the law firm is not before us.

[2]The plaintiff is referenced as "Jane Doe" in the suit title but as "J.K." in the opinion pursuant to a judgment rendered by the trial court on a motion in limine filed by the plaintiff to seal the record and opposition to the motion by the defendants. Furthermore, pursuant to La.R.S. 46:1844(W), the plaintiff's initials are used to protect her identity.

1

In stark contrast, Hawkins' version of the events contradicts the plaintiff's. In his testimony, Hawkins stated that the plaintiff initiated the physical contact between them when she suddenly pushed him against the wall, put her face up to his, and began aggressively kissing him. Although Hawkins admitted returning her kisses, he said the plaintiff stuck her hand in his pants and began grasping his penis. In turn, Hawkins admitted that he put his hand inside the plaintiff's pants and panties, touched her vagina, and fondled her breasts. At that point, Hawkins claimed that the plaintiff dropped to her knees and unzipped his pants in an attempt to perform fellatio on him. However, he testified that he pushed the plaintiff away.

Several days after the events of the evening of March 9, 2007, the plaintiff reported the assault and rape to the police, and, following an investigation, Hawkins was charged with simple rape of the plaintiff. Hawkins later pled guilty to second degree battery.[3] *See State v. Hawkins,* Docket Number 118,636, Fifteenth Judicial District Court, Lafayette Parish, Louisiana.

The plaintiff filed suit for damages against Hawkins and the firm. In her petition, the plaintiff initially asserted that the firm was liable to her under the doctrine of *respondeat superior*. The firm filed a peremptory exception of no cause of action, contending that the Louisiana Workers' Compensation law barred the plaintiff's negligence claim. The trial court granted the firm's peremptory exception, finding that the plaintiff failed to allege that the events had anything to do with the

---

[3]By order of the Louisiana Supreme Court, Hawkins was suspended from the practice of law on an interim basis pursuant to Supreme Court Rule XIX, pending further orders of the court. It was further ordered that disciplinary proceedings be instituted against Hawkins. *In re: Scott M. Hawkins*, 08-2867 (La. 1/7/09), 998 So.2d 73.

practice of law. Nonetheless, pursuant to La.Code Civ.P. art. 934, the trial court allowed the plaintiff the opportunity to amend her petition.[4]

In accordance with the trial court's ruling, the plaintiff amended her petition, claiming that when the rape occurred she was not in her role of employee but was a client of the firm; she contended that the firm was advising her pro bono on child custody issues she had from a prior marriage. She further asserted that at the time of the rape, she was on the premises of the firm accompanied by her boyfriend, Mr. White, who was scheduled to appear in court on Tuesday, March 14, 2007, and that Mr. White was an invitee of the firm on the evening of March 9, 2007. Later, in her deposition, the plaintiff explained that her boyfriend was not present at the time of the alleged assault and rape on the firm's premises and that she was surprised by his absence.

The firm filed a motion for summary judgment. In its motion, the firm asserted that even though the plaintiff contended in her amending petition that she was a client of the firm, that issue was no longer viable because summary judgment was granted in favor of its legal malpractice insurer, dismissing it from the plaintiff's lawsuit. Accordingly, it contended that "the only claim left is an intentional tort by a member of the firm which occurred after hours and was not in connection with the furnishing of legal services." Therefore, it concluded that the only remaining issue was whether the firm could be held vicariously liable for Hawkins' intentional acts on March 9, 2007, because his actions were not employment related.

---

[4]The plaintiff also sued the firm's professional liability and business liability insurers to recover damages. The insurers filed motions for summary judgment, contending that the policies they issued to the firm either did not provide coverage for or excluded the plaintiff's claims. The trial court granted the motions for summary judgment in favor of the insurers, and the plaintiff did not appeal those judgments. Accordingly, the dismissal of the plaintiff's claims against the firm's professional liability and business liability insurers is not before us.

In support of its motion, the firm, relying on *LeBrane v. Lewis*, 292 So.2d 216 (La.1974), a vicarious liability case, and its progeny, introduced Hawkins' plea agreement and a statement of undisputed facts, to-wit: (a) the alleged rape occurred after business hours; (b) Hawkins pled guilty to second degree battery, an intentional tort; (c) the actions of Hawkins in raping or battering the plaintiff were not reasonably incidental to the performance of the plaintiff's duties and did not arise out of an employment-related dispute; and (d) the alleged rape and the battery were not in furtherance of the firm's business of providing legal services.

The plaintiff opposed the firm's motion for summary judgment, arguing, *inter alia*, that she was not only an employee of the firm, but also an invitee and client of the firm. In support of her argument in opposition, the plaintiff attached the following exhibits: the plaintiff's first set of interrogatories to the firm; the firm's answers to interrogatories; the firm's amending answer to interrogatories; the plaintiff's deposition; the deposition of Dana Trahan, a former employee of the firm; the court transcript of Kevin Hawkins'[5] (hereafter Kevin) testimony in Hawkins' criminal prosecution; the deposition of Chris Villemarette; and the firm's articles of organization as a limited liability company.

The trial court conducted a hearing on the firm's motion for summary judgment. After taking the matter under advisement, the trial court provided written reasons for judgment and granted the firm's motion for summary judgment. As the trial court noted in its written reasons, it is undisputed that the plaintiff was an employee of the firm on the date of the alleged rape and that the alleged rape occurred on the firm's premises after business hours. In granting the firm's motion for

---

[5]Kevin Hawkins is the brother of Scott Hawkins.

4

summary judgment, the trial court then determined: (1) the firm cannot be vicariously liable for Hawkins' conduct because the act complained of was not related in time and place to the functions and duties for which he was employed; (2) nevertheless, the firm may be potentially liable for its own negligence; (3) there is no legal support for the conclusion that as her employer, the firm owed the plaintiff an independent duty to protect her from the injury at issue; (4) there cannot be an independent duty owed to the plaintiff as an employee that does not arise out of the employee/employer relationship; and (5) although the plaintiff argues she was an invitee, she points to the actions of the firm, as her employer, as the sole basis for the duty upon which she relies.

## SUMMARY JUDGMENT

Appellate courts review summary judgments de novo, using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. *La. Safety Ass'n of Timbermen Self-Insurers Fund v. La. Ins. Guar. Ass'n*, 09-23 (La. 6/26/09), 17 So.3d 350. A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). Summary judgment is favored and shall be construed "to secure the just, speedy, and inexpensive determination of every action." La.Code Civ.P. art. 966(A)(2).

The initial burden of proof remains with the movant to show that no genuine issue of material fact exists. La.Code Civ.P. art. 966(C)(2). However, if the movant will not bear the burden of proof at trial, he need not negate all essential elements of the adverse party's claim, but he must point out that there is an absence of factual

5

support for one or more elements essential to the claim. *Id.* Once the movant has met his initial burden of proof, the burden shifts to the adverse party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. *Id.*

"Any decision as to the propriety of a grant of the motion must be made with reference to the substantive law applicable to the case. Only in the context of the applicable substantive law can issues of material fact be ascertained." *Doe v. La. Mun. Ass'n*, 99-539, pp. 6-7 (La.App. 5 Cir. 10/26/99), 746 So.2d 179, 182.

## DISCUSSION

### *Social Host Immunity under La.R.S. 9:2800.1*

Prefatory to our discussion of the issue of the firm's motion for summary judgment, we first address the firm's contention that pursuant to La.R.S. 9:2800.1(C), it is immune from liability arising from its purchasing and/or serving alcohol to Hawkins and the plaintiff. It argues that there is no need to address the plaintiff's claims of independent negligence because the legislature has provided absolute immunity to social hosts who provide intoxicating beverages to persons above the lawful age. We find the firm's argument misplaced.

Louisiana Revised Statutes 9:2800.1 provides, in pertinent part:

> A. The legislature finds and declares that the consumption of intoxicating beverages, rather than the sale or serving or furnishing of such beverages, is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person upon himself or upon another person.
>
> . . . .
>
> C. (1) Notwithstanding any other law to the contrary, no social host who serves or furnishes any intoxicating beverage of either high or low alcoholic content to a person over the age for the lawful purchase thereof shall be liable to such person or to any other person or to the

6

estate, successors, or survivors of either for any injury suffered off the premises, including wrongful death and property damage, because of the intoxication of the person to whom the intoxicating beverages were served or furnished.

A cursory examination of the statute indicates that La.R.S. 9:2800.1(C)(1) provides immunity to social hosts who serve or provide intoxicating beverages to a person over the age of twenty-one "for any injury suffered off the premises." In the present case, it is undisputed that the plaintiff's injuries occurred on the firm's premises. Thus, La.R.S. 9:2800.1(C)(1) is inapplicable. *Accord Roy v. Kyrles, Inc.*, 07-1605 (La.App. 3 Cir. 5/14/08), 983 So.2d 975; *Collins v. Huynh*, 04-255 (La.App. 3 Cir. 12/22/04), 891 So.2d 796, *writ denied*, 05-529 (La. 4/29/05), 901 So.2d 1070; *Zapata v. Cormier*, 02-1801 (La.App. 1 Cir. 6/27/03), 858 So.2d 601.

### *Independent Negligence; Summary Judgment*

From the outset, the plaintiff contends that the trial court erred as a matter of law in finding that the firm did not "owe[] her an 'independent' duty in its capacity as her employer to protect her from the injury at issue here." She argues that the issue presented is whether a limited liability company, such as the firm, can be found independently negligent because it owed her a duty as an invitee of the firm and client of the firm.[6] For the following reasons, we find that the firm had a duty to this plaintiff which was independent of its vicarious liability for Hawkins' actions as an employee of the firm, which we will hereinafter refer to as "independent negligence."

In its dismissal of the plaintiff's claim that the firm was liable because the plaintiff was an invitee on the firm's premises, the trial court stated, "Although [the plaintiff] argues she was an invitee rather than an employee, she points to the actions

---

[6]Although the plaintiff argued to the trial court that the firm was vicariously liable for Hawkins' actions, she makes no such argument on appeal.

7

of the law firm, as her employer, as the basis for the duty upon which she relies." The firm asserts this same conclusion in support of its position. Neither the trial court nor the firm provides a legal basis for this conclusion, and we find none.

When we examine the trial court's analysis of this issue, it is apparent that no differentiation was made to account for the fact that the plaintiff's legal relationship with the firm was multifaceted. Unquestionably, the plaintiff was an employee of the firm and that relationship existed within jurisprudentially, well-defined boundaries. However, beyond that characterization, she was also a social guest after work. And, more importantly, independent of that characterization, the plaintiff, as elaborated upon hereafter, was also a client of the firm. Accordingly, it is clear that the plaintiff's legal relationship to the firm was many-sided with discrete legal ramifications applicable to each.

Such differentiation has been recognized in the law. In *Wesley v. Food Bank of Northeast Louisiana, Inc.*, 36,588, pp. 6-7 (La.App. 2 Cir. 1/7/03), 834 So.2d 19, 23 (footnote omitted), our brethren of the second circuit stated:

> Although Ms. Wesley had been volunteering her services at the Food Bank on the day of the accident, her presence at the loading dock at the time of the accident was unrelated to her volunteer work. She was still present at the warehouse because her sister was gathering an assortment of food to take home. Under the circumstances, we believe that she may be considered a business invitee.

With that as background, we will address the law relative to invitees and explore the attorney-client relationship.

The term "invitee" is well-defined in the jurisprudence. In *Mercer v. Tremont & Gulf Railway Co.*, 19 So.2d 270, 275 (La.App. 2 Cir. 1944) (citing 38 Am.Juris., Secs. 98, 99, pp. 758, 759*)* the court defined "invitee" as follows:

8

An invitee, by definition, is considered to be one who enters upon the premises of another in answer to a direct or implied invitation. . . . It is thus apparent that the purpose of the entry is an important feature in defining and establishing the class in which a given individual should be placed. In determining the purpose of the visitor, with regard to his classification [as an invitee], it is well-established that such purpose must be one concerning a matter of mutual interest, the performance of some duty, a proceeding in the usual course of business, or a matter which will benefit the owner or occupant of the premises.

Reviewing the plaintiff's original and supplemental petitions, it is clear she alleged that she was an invitee. Nothing to the contrary is argued either in the firm's motion for summary judgment or its supporting documents.

Our law has long recognized that business proprietors must maintain their premises in a reasonably safe condition for their patrons. *Harris v. Pizza Hut of La., Inc.*, 455 So.2d 1364 (La.1984). A proprietor is not the insurer of his patrons or guests, but he has a two-pronged duty to persons on his premises: he must exercise reasonable care for their safety and he must not expose them to "unreasonable risks of injury or harm." *St. Hill v. Tabor*, 542 So.2d 499, 502 (La.1989) (quoting *Walker v. Union Oil Mill, Inc.*, 369 So.2d 1043, 1047 (La.1979). This is a general duty which obligates the proprietor to protect his patrons "from insult, annoyance, and danger." *J.B. Saucier v. Players Lake Charles, LLC*, 99-1196, p. 9 (La.App. 3 Cir. 12/22/99), 751 So.2d 312, 318. A business owner's duty to an invitee was further explained in *Crittenden v. Fidelity & Casualty Co. of New York*, 83 So.2d 538, 540 (La.App. 2 Cir. 1955) (quoting 65 C.J.S. Negligence § 50, 541):

'The basis of the inviter's liability for injuries sustained by the invitee on the premises rests on the owner's superior knowledge of the danger, and as a general rule he is not liable for an injury to an invitee resulting from a danger which was obvious or should have been observed by the invitee in the exercise of reasonable care, or from a condition which was as well known or as obvious to the invitee as to the inviter, or which the inviter had no reason to believe would not be discovered by the invitee. There is no duty to warn the invitee of any defect or danger which is as

well-known to the invitee as to the owner or occupant, or which is obvious or which should be observed by the invitee in the exercise of ordinary care. However, even though the invitee has knowledge of the danger, or the defect is obvious, the duty of the owner or occupant to use reasonable care to keep the premises reasonably safe for invitees remains, and it runs concurrently with the duty of the invitee to protect himself, so that, where the invitee does not fully appreciate the danger or is without fault, the owner or occupant may be held liable for the injury.'

Furthermore, the proprietor's general duty encompasses the more particular obligation to refrain himself "from any conduct likely to cause injury to a guest." *J.B. Saucier*, 751 So.2d at 318. *See also Anderson v. Clements*, 284 So.2d 341 (La.App. 4 Cir. 1973).[7]

It is equally clear the plaintiff has asserted in her pleadings that she was the firm's client at the time of her alleged assault and rape. In its memorandum in support of its motion for summary judgment, the firm contends that the issue of whether the plaintiff was a client of the firm was resolved when the firm's legal malpractice insurer was dismissed from this litigation on a motion for summary judgment. We disagree. Our review of the resolution of the firm's legal malpractice insurer's dismissal shows that the dismissal of its legal malpractice insurer was premised on issues of insurance coverage and exclusions contained in the insurance policy. As such, we do not find the dismissal was determinative of whether an attorney-client relationship existed between the plaintiff and the firm.

What constitutes an attorney-client relationship was explored in the case of *In re Austin*, 06-630 (La. 11/29/06), 943 So.2d 341. Therein, our supreme court considered the question of when an attorney-client relationship exists and stated:

---

[7]"The relationship of an employer to his employee gives rise to a similar duty." *Mundy v. Dep't of Health & Human Res.*, 620 So.2d 811, 813 (La.1993) (citing Restatement (Second) of Torts § 314A comment (a) (1965)).

The RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 14 (2000) provides some guidance in determining when an attorney-client relationship arises. That section provides, in pertinent part:

> A relationship of client and lawyer arises when:
>
> > (1) a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; and either
> >
> > > (a) the lawyer manifests to the person consent to do so; or
> > >
> > > (b) the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services . . . .

*Id.* at 347.

It is recognized "there can be a potential for confusion when an attorney wears a multitude of hats." *Id.* at 348. To protect the client, our supreme court "has given great deference to the client's subjective belief whether an attorney-client relationship exists." *Id.; see also In re LeBlanc*, 04-681 (La. 10/14/04), 884 So.2d 552; *La. State Bar Ass'n v. Bosworth*, 481 So.2d 567 (La.1986). "Nonetheless, the overarching question is whether there is a reasonable, objective basis to determine that an attorney-client relationship has formed." *Austin*, 943 So.2d at 348.

Louisiana law recognizes that an "attorney's paramount duty is[, and must be,] to his client." *Penalber v. Blount*, 550 So.2d 577, 581 (La.1989). Our law adheres to the principle that "[i]n no other agency relationship is a greater duty of trust imposed than in that involving an attorney's fiduciary duty to his client."[8]

---

[8] A fiduciary relationship has been described as "one that exists 'when confidence is reposed on one side and there is resulting superiority and influence on the other.'" *Plaquemines Parish Comm'n Council v. Delta Dev. Co., Inc.*, 502 So.2d 1034, 1040 (La.1987) (quoting *Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn.1985) (citations omitted)).

'The word 'fiduciary,' as a noun, means one who holds a thing in trust for another,

*Plaquemines Parish Comm'n Council v. Delta Dev. Co., Inc.*, 502 So.2d 1034, 1040 (La.1987).  As noted in *Searcy v. Novo*, 188 So. 490, 498 (La.App. 2 Cir.1939):

> The law leaves no uncertainty in defining the character of duty which an attorney owes to his client.  The relation of attorney and client is more than a contract.  It superinduces a trust status of the highest order and devolves upon the attorney the imperative duty of dealing with the client only on the basis of the strictest fidelity and honor.

"In no relationship is the maxim that 'no man can serve two masters' more rigidly enforced than in the attorney-client relationship."  *Plaquemines Parish Comm'n Council*, 502 So.2d at 1040 (quoting *Parkerson v. Borst*, 264 F. 761, 765 (5th Cir. 1920), *cert. denied*, 254 U.S. 634, 41 S.Ct. 8 (1920)).

"[T]his principle of undivided loyalty is firmly embedded in the Rules of Professional Conduct (RPC) adopted by [our state supreme] court pursuant to its exclusive and plenary power to regulate the practice of law.  LSA–La.Const. art. II, §§ 1, 2."  *Scheffler v. Adams & Reese, LLP,* 06-1774, p. 13 (La. 2/22/07), 950 So.2d 641, 651.  Louisiana Rules of Professional Conduct, Rule 1.7 recognizes that loyalty is essential to the attorney-client relationship, as it "generally prohibits a lawyer from representing a client if the representation of that client may be materially limited by

---

> a trustee; a person holding the character of a trustee, or a character analogous to that of a trustee, with respect to the trust and confidence involved in it and the scrupulous good faith and candor which it requires; a person having the duty, created by his undertaking, to act primarily for another's benefit in matters connected with such undertaking.'

*State v. Hagerty*, 251 La. 477, 492, 205 So.2d 369, 374 (La.1967), *cert. denied*, 391 U.S. 935, 88 S.Ct. 1848 (1968) (quoting 36A C.J.S. *Fiduciary*, p. 381).  It is said that one acts in a fiduciary capacity:

> '[W]hen the business which he transacts, or the money or property which he handles, is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other part.'

*Id.*, 251 La. at 493, 205 So.2d at 374-75 (quoting BLACK'S LAW DICTIONARY (4th ed.1951)).

the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests." *Id.* at 651-52. The duty of loyalty is so important that termination of the attorney-client relationship does not terminate the duty. *Scheffler*, 950 So.2d 641. Moreover, pursuant to La.Rules Prof.Conduct Rule 2.1, a lawyer also has an affirmative obligation to his clients "to exercise independent professional judgment and to render candid advice to his or her client," which emphasizes "the importance of avoiding any divided loyalties that might cloud [the lawyer's] independent judgment." *Id.* at 652.

In the present case, the facts as developed thus far establish an attorney-client relationship existed between the plaintiff and the firm[9] that bears upon the resolution of this case. The evidence shows that the plaintiff was a pro bono client of the firm.[10] Hawkins had advised her on a child custody issue, and Villemarette had actually corresponded with the court and appeared in open court to have the custody hearing upset. There is no indication in the record that the custody issue was resolved; in fact, to the contrary, the plaintiff stated that she and Hawkins discussed this matter on the night she alleged that she was assaulted and raped.

---

[9]A second attorney-client relationship is shown in the record that may ultimately bear on the resolution of this case. The record reflects that the plaintiff's boyfriend, Mr. White, was on the firm's premises shortly before the plaintiff was allegedly assaulted and raped. During the evening, he discussed his upcoming criminal trial where he was charged with driving while intoxicated. At the conclusion of that discussion, Hawkins agreed to appear on Mr. White's behalf at a court hearing on the following Tuesday. As shown in the plaintiff's answers to interrogatories on file and Mr. White's statement to the police, a dispute broke out during the evening of March 9, 2007, between Mr. White and the plaintiff; at that time, it is alleged that Hawkins counseled Mr. White to leave the firm's premises to avoid any confrontation with the police—all of this just shortly before the alleged sexual assault and rape took place.

[10]The pro bono nature of the attorney-client relationship is of no moment; such characterization neither absolves liability or lowers the duty the attorney has to his pro bono client. To the contrary, "[a]n attorney engaged in pro bono representation must provide the same quality of legal services as that due to a compensated client." Maraist, Smith, Daley, and Galligan, 21 *Louisiana Civil Law Treatise: Louisiana Lawyering* § 11.3 (2010).

13

After considering that the plaintiff was an invitee and/or client, the issue is whether the firm, in accordance with its duty, exercised reasonable care with regard to its premises and this client/invitee. The question of whether the plaintiff relied upon the firm's actions associated with her employment, though relative to other aspects of the duty-risk analysis, is immaterial to the existence of the firm's duty as a business proprietor to this plaintiff. Thus, we find that the firm owed her a duty to refrain itself from conduct likely to cause her injury as both a social and business guest.[11] *See, Crittenden*, 83 So.2d 538.

> On a motion for summary judgment, the court must first determine whether the supporting documents presented by the moving party are sufficient to resolve all material fact issues. If they are not sufficient, summary judgment must be denied. Only if they are sufficient does the burden shift to the opposing party to present evidence that material facts are still at issue, and only at this point may he no longer rest on the allegations and denials contained in his pleadings.

*Chargois v. Trip-L-Quik*, 441 So.2d 45, p. 47 (La.App. 3 Cir. 1983).

The summary judgment procedure is favored, but it cannot be used as a substitute for trial, and it is often "inappropriate for judicial determination of subjective facts, such as motive, intent, good faith or knowledge." *S.J. v. Lafayette Parish Sch. Bd.,* 06-2862, p. 5 (La. 6/29/07), 959 So.2d 884, 887. That is because

---

[11]In tort actions, the inquiry into the question of negligence is determined on a case-by-case basis with attention given to the facts of that particular case. In that regard, it is important to note that the present case involves a two-person limited liability law firm, and our comments should be read in that context. A limited liability company is a legal entity separate from its member owners, La.R.S. 12:1301(10), 1304(A), and maybe liable in its own right. *See* La.R.S. 12:1320(B) which provides that a member of a limited liability corporation is not liable for the debts or obligations of the corporation.

In the present case, it is undisputed that the two members of this limited liability company shared its management equally. Rules of Professional Conduct, Art. 16, Rule 5.1(a) states:

> A partner in a law firm, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm, shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct.

subjective facts "call for credibility evaluations and the weighing of testimony." *Id.* Furthermore, when the trial court is considering the merits of a motion for summary judgment, it cannot "determine or even inquire into the merits of issues raised or . . . weigh conflicting evidence on the existence of material facts." *Benniefiel v. Zurich Am. Ins. Co.,* 08-1416, p. 5 (La.App. 3 Cir. 5/6/09), 10 So.3d 381, 385 (quoting *Brittain v. Family Care Servs., Inc.*, 34,787, p. 4 (La.App. 2 Cir. 6/20/01, 801 So.2d 457, 460). If "affidavits and exhibits present a choice of reasonable inferences, such inferences must be viewed in the light most favorable to the party opposing the motion for summary judgment." *Id.*

In the present case, nothing in the firm's memorandum in support of its motion for summary judgment addresses the plaintiff's allegations that she was an invitee and/or client or her contention that the firm was liable to her under the theory of independent negligence. To the contrary, the firm frames the issue on summary judgment as "whether [it] can be held vicariously liable in this situation." Our review of the firm's memorandum shows that it cites jurisprudence that solely involves vicarious liability[12] and does not address the firm's independent negligence. Moreover, Hawkins' plea agreement, the only exhibit attached to the firm's motion for summary judgment, is referenced solely in support of its contention that Hawkins' actions were purely personal and totally unrelated to his employment. As such, the

---

[12]In addition to *LeBrane*, 292 So.2d 216, the fountainhead case on vicarious liability, the cases of *Russell v. Noullet*, 98-816 (La. 12/1/98), 721 So.2d 868; *Baumeister v. Plunkett*, 95-2270 (La. 5/21/96), 673 So.2d 994; *Cager v. Williams*, 03-212 (La.App. 4 Cir. 11/12/03), 861 So.2d 239, *writ denied*, 03-3424 (La. 2/20/04), 866 So.2d 833; *Faust v. Greater Lakeside Corp.*, 98-2853 (La.App. 4 Cir. 9/12/01), 797 So.2d 748, *writ denied,* 01-3149 (La. 2/1/02), 808 So.2d 343; and *Armand v. Lachney*, 05-763 (La.App. 3 Cir. 2/1/06), 921 So.2d 1196, all only discuss vicarious liability. Although *Smith v. Lafayette Parish Sheriff's Dep't*, 03-517 (La.App. 3 Cir. 4/21/04), 874 So.2d 863, *writ denied*, 04-1886 (La. 10/29/04), 885 So.2d 595, the other case addressed in the firm's memorandum, touches upon independent negligence, the bulk of that opinion speaks to the question of vicarious liability, and it is only this latter principle that the firm relies upon.

15

firm contends that this plea agreement negates one of the *LeBrane* factors considered in the determination of vicarious liability, namely, whether the tortious act was primarily employment rooted.

Viewing the firm's failure to address the issues of the firm's independent negligence and the plaintiff's legal status as an invitee and/or client, with the concomitant legal duties that attach to those legal relationships, we find that the firm failed to carry its burden to resolve all genuine issues of material fact relative to those issues and that it also failed to establish that it was entitled to judgment as a matter of law.

Even though we find that the firm failed to carry its burden on its motion for summary judgment, our determination is underscored by evidence the plaintiff presented as the party adverse to the firm's motion. First, the depositional testimony shows that Hawkins, Villemarette, and Kevin, the office manager,[13] were known to drink alcoholic beverages on occasion during business hours off and on the firm's premises and that on some of those occasions, also off and on the firm's premises, the firm's employees were allowed to drink and socialize with the firm's management. Some former employees testified that the term "drunk Fridays" was used to describe Friday afternoons at the firm. Former employees also testified that there was a sauna located in the office and Hawkins would walk through the firm's office during business hours from the sauna to his individual office wrapped in a towel and that he made sexually-provocative comments and overtures to employees, including the plaintiff. Employee testimony further shows that some former employees feared Hawkins and felt his temper and his "drinking problem" endangered them.

---

[13]Kevin is not an attorney.

16

Furthermore, one former employee, Dana Trahan, testified that on one occasion while she was a firm employee, she drank alcoholic beverages on the firm's premises with other employees and became intoxicated. She next testified that she and Hawkins went into the sauna. Ms. Trahan stated that while they were in the sauna, Hawkins tried to kiss and touch her. She further testified that Hawkins attempted sexual intercourse with her in the sauna. Not wanting that to happen, Ms. Trahan told him that she had herpes, and Hawkins halted his advances. According to Ms. Trahan, she left the sauna and went into the office shower. Hawkins then followed her into the shower and said, "You might as well finish me off." She testified that, fearing that she would lose her job if she did not do as told, she complied by performing fellatio on him. Ms. Trahan testified that she told a friend about the incident, but she did not tell anyone at the firm.

Additionally, in her deposition the plaintiff explained that immediately after realizing she had been sexually assaulted, she asked Hawkins where her boyfriend was and why he had left. Ultimately, she said that her boyfriend, Mr. White, explained as follows:

> He said that I became very agitated and upset and throwing things. And Scott [Hawkins] told him [Mr. White] that the police – Scott Hawkins told him if the police were to come that they would think it was a domestic dispute, and David [White] would go to jail. That he [Hawkins] would take care of it, being my attorney – he would act as my attorney and take care of it.

Her testimony also showed that Mr. White further told her that he trusted Hawkins because he was her attorney and employer. For those reasons, Mr. White said he left the plaintiff alone with Hawkins.

The testimony of the plaintiff in this regard is further elaborated upon in her answers to interrogatories propounded to her. Therein she stated, in pertinent part:

17

When I told David that Scott had raped me he became very upset. David went into the bathroom and threw up. He came out of the bathroom with tears in his eyes and began to explain to me why he had left. He told me that the night before Scott told him that he, Scott, was going to do an OPC [order for protective custody] on me if he couldn't get me to calm down. He told David that he shouldn't be around because if the police were called, David could end up in jail for domestic violence. Scott said that he wasn't worried about jail because he was my attorney. So David took Scott's advice and left.

Examining this evidence and testimony de novo, we find that it establishes a genuine issue of material fact, particularly implicating the supplying of legal services, that can only be resolved at a trial on the merits.[14] "It is not the court's function on a motion for summary judgment to determine or even inquire into the merits of the issues presented." *Lexington House v. Gleason,* 98-1818, p. 6 (La.App. 3 Cir. 3/31/99), 733 So.2d 123, 126, *writ denied*, 99-1290 (La. 6/25/99), 746 So.2d 603

---

[14]At the hearing on the firm's motion for summary judgment, the trial court alluded to this question, stating:

> What particularly causes some pause with me . . . is . . . that Mr. White supposedly was told to leave because he, Mr. Hawkins, as an attorney, was going to take care of the victim in this case and take care of the situation.
>
> That's a little bit different than just being an invitee having a party. This is -- Hawkins & Villemarette was in the business of practicing -- of supplying legal services. Certainly, this would not be . . . within malpractice coverage, but the question is . . . [d]id he [Hawkins] use that position as her attorney to facilitate this occurring, and did, therefore, Hawkins & Villemarette have some responsibility?
>
> . . . .
>
> . . . [T]here doesn't seem to be a dispute that there was some sort of argument that arose between the plaintiff in this case and Mr. White. And there does not seem to be a dispute that Mr. Hawkins convinced Mr. White that he should leave the premises.
>
> The dispute seems to be under what circumstances he did that and in what capacity. And, to me, that is an issue in the sense that, if he was using his position as her attorney to convince Mr. White to leave to facilitate his commission of this act, you may have a situation where the firm would have responsibility.
>
> And I'm not saying that factually, any of that's going to be able to be established. But the question is, for purposes of summary judgment . . . [that] . . . will be what the jury believes or doesn't believe.

(citing *Succession of Harvey v. Dietzen*, 97-2815 (La.App. 4 Cir. 6/24/98), 716 So.2d 911, *writ denied*, 98-2025 (La. 11/6/98), 728 So.2d 391.

**DECREE**

For the foregoing reasons, the judgment of the trial court granting the motion for summary judgment filed by Hawkins and Villemarette, L.L.C. is reversed and set aside. This case is remanded to the trial court for further action consistent with this opinion. Costs of the trial court and this appeal are assessed to Hawkins and Villemarette, L.L.C.

**REVERSED; REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

COURT OF APPEAL

THIRD CIRCUIT

DOCKET 09-1184

JANE DOE

VERSUS

SCOTT M. HAWKINS, ET AL.

**GREMILLION, Judge, dissents.**

According to her allegations, plaintiff, a receptionist for a law firm, became intoxicated during an evening in which she and others, including one of the attorneys, were consuming alcohol on the premises of the firm. She lay down to sleep it off on the attorney's couch, and when she awoke, she alleges the attorney was raping her.

Plaintiff filed suit against the attorney and the firm, an LLC. The LLC filed a motion for summary judgment, asserting that it was not vicariously liable for the attorney's actions, and that it was not liable independently, as it was granted immunity under La.R.S. 9:2800.1 as a host serving alcohol. The trial court granted summary judgment in favor of the firm, and plaintiff appealed.

The majority reverses summary judgment in favor of the LLC. It opens its analysis with the law of summary judgment. I believe it perfectly captured the essence of the law governing summary judgment.

I agree with the majority that the firm is not immune as a host under La.R.S. 9:2800.1. The alleged injuries were incurred on the premises; therefore, the statute does not apply to this situation.

The majority next purports to turn its analysis to the issue of independent negligence on the part of the firm. However, it mixes analyses of both vicarious

liability and independent negligence. Its reliance on the status of the plaintiff as either an "invitee" or a client of the firm is misplaced in terms of analyzing the independent negligence of the firm.

In *Cates v. Beauregard Elec. Coop.*, 328 So.2d 367 (La.1976), the supreme court dismissed any distinction between invitees, licensees, and trespassers in determining the scope of a duty owed by an owner of premises to those upon his land. The proper analysis is strictly whether the landowner or proprietor exercised reasonable care. Thus, the only questions that can be properly answered by discussing why or in what capacity plaintiff was present on the night in question are: 1) Is plaintiff's action in tort barred by the exclusive remedy of workers' compensation? and, 2) Is the firm vicariously liable for Hawkins's alleged tort?

In determining whether the firm itself breached a duty owed to Doe, the proper analytical framework is, as the majority points out, set forth in *Harris v. Pizza Hut of La., Inc.*, 455 So.2d 1364 (La.1984). A business has an obligation to protect those entering its premises from foreseeable risks of assault.

It is axiomatic that one moving for summary judgment need only demonstrate an absence of factual support for one essential element of a plaintiff's cause of action in order to shift the burden to the plaintiff to produce evidence supporting that element. If the plaintiff is unable to produce evidence showing that a genuine issue of material fact exists, the court must grant summary judgment. In the present case, the existence of a duty is an essential element of the plaintiff's cause of action. The existence of a duty, though, is a question of law, not fact. *Id.*

As a general rule, there is no duty to protect others from criminal acts of a third person. *Id.* However, a proprietor does owe a duty to provide its customers with a

2

reasonably safe place, which necessarily requires an inquiry into whether any criminal acts that occur on the premises are foreseeable. *Id.*

Nothing in the record establishes that the risk that Hawkins would rape an employee, client, or, anyone else on the premises, was foreseeable. At most, the record establishes that the LLC knew Hawkins was boorish, chauvinistic, lewd, and promiscuous. These characteristics may be shared with sexual predators, but they are not exclusive to sexual predators.

The majority focuses on seven facts that it contends represent genuine issue of material fact. First is the regular consumption of alcohol during office hours. Second is the existence of a sauna on the premises. Third is Hawkins's use of the sauna, including walking from his office to the sauna and back wearing only a towel. The fourth fact the majority points to as creating a genuine issue of material fact is Hawkins's suggestive comments to employees. Fifth, some former employees claimed that they feared Hawkins because of his temper and intemperance. These facts establish that Hawkins was riddled with vice and was unacquainted with generally accepted notions of office politesse—not that he was a rapist.

Sixth, the majority points to the incident involving Ms. Trahan, who voluntarily disrobed, entered the sauna with Hawkins, was engaged in intercourse with Hawkins, and changed her mind. Hawkins followed her into the shower, asked her for oral sex, and she complied because she feared for her job. These facts, while they are certainly the most salacious, are utterly irrelevant because the record does not provide any evidence that the firm, and specifically Chris Villemarette, who was the only other member of the LLC, knew of this sordid incident. Even were that evidence to exist, it would lead only to the reasonable conclusion that Hawkins was engaging in bald

3

and shameless sexual harassment—not that he was a rapist.

Thereafter, the seventh fact that the majority asserts creates a genuine issue of material fact is Hawkins's behavior after the alleged rape has occurred. It is metaphysically impossible for this behavior to have in any way caused or contributed to the act of rape. It is equally impossible that Hawkins's actions after the rape could make it foreseeable that such an act would occur. Furthermore, these facts only involve discourse between Hawkins and White. The statements alluded to by the majority are those in which the plaintiff related what White told her. They are hearsay and cannot be considered on summary judgment. *See Hargrave v. Delaughter*, 08-1168 (La.App. 3 Cir. 3/4/09), 10 So.3d 245.

Another difficulty in the majority's opinion lies in its focus on the LLC's memorandum in support of the summary judgment, and the fact that it scarcely addresses the independent negligence cause of action. The memoranda merely states the arguments of counsel. They represent no admissible evidence. The fact that the LLC devoted the majority of its arguments to the issue of vicarious liability does not create an issue of fact. Indeed, I find it unsurprising that the firm would focus on the vicarious liability issue, because the existence of an independent duty to prevent Hawkins from raping the plaintiff seems so absurd and remote a possibility.

I also disagree with the decision on the grounds of basic public policy. Hawkins should not be allowed to shift the burden of his alleged criminal behavior onto another who is not in a position to anticipate or prevent such an outrage. The opinion does not advise what the LLC should have or could have done to prevent this violent injustice. Should the other member of the LLC have handcuffed himself to Hawkins 24/7 because Hawkins participated in "drunk Fridays" and said insulting

4

things to the staff?  Perhaps he should never have gone home to his family at the end of the day for fear that his law partner might do something stupid or hurtful after hours?  Doe suggested in argument that it would have been reasonable for the other member of the LLC to have dissolved the franchise and gone to work somewhere else.  Perhpas this is so, but that would not have prevented this alleged rape.

Finally, I do not see the necessity to discuss the firm's professional obligation to the plaintiff.  The canons of lawyerly ethics neither add nor detract from the prohibition against rape.  Hawkins' obligation not to rape the plaintiff is no greater than his obligation not to rape anyone else whether she be a client, employee, or stranger on the street.  Likewise, the two-member LLC had a moral and legal responsibility to protect the plaintiff (be she an invitee or a trespasser) from any foreseeable wrong, including rape, that may befall her.  The plaintiff's problem here is that the record simply does not establish that the alleged rape was foreseeable to the LLC.

I would affirm the trial court.