TOBIAS, J.,
dissents in part and assigns reasons.
h This case comes to this court for review of the trial court’s granting of the defendants/appellees motions for summary judgment. It is a case in which the plaintiffs/appellants have requested a trial by jury. In my view, the majority clearly errs in affirming two of the three trial court granted motions for summary judgment because genuine issues of material fact remain.
The majority, in my view, omits material facts from their opinion relative to this trip and fall case. Further, the majority’s analysis of the law is flawed based upon the facts in this case. Thus, their de novo review reaches an incorrect result insofar as the appellants’ claims against The Palms Casino & Truck Stop, Inc. (“The Palms Casino”) and J <& R Amusement Co., Inc. (“J & R Amusement”). The issue is not whether the wheel stop was “unreasonably dangerous,” as the majority says and the defendants repeatedly argue; rather, the issue is whether a wheel stop in an inadequately lit parking lot creates an unreasonable risk of harm to an individual such as the plaintiff, Lillie Lab it. “Unreasonably dangerous” applies to a products liability case, not a trip and fall, resulting in injury. See La. R.S. 9:2800.51, et seq. No matter how many times the majority and the appellees state or urge that the wheel stop was not unreasonably dangerous, that is simply not the relevant test or law in this case. For the reasons that follow, I would reverse the |2granting of the motions for summary judgments in favor of The Palms Casino and J & R Amusement, but affirm the granting of the motion for summary judgment in favor of Delmas Bosarge d/b/a Bosarge Striping Service (“Bosarge”).
/.
At issue in this case is a 4.5-inch high, 7-inch wide, 72-inch long, gray concrete wheel stop.[1] The wheel stop at issue is located 3 feet from the edge of a 4.5-inch high curb that adjoins and is at the same height of a gray concrete sidewalk. The face of the curb is painted yellow, but the top of the curb (which level with and immediately joins a concrete sidewalk) is not painted. Further, the wheel stop is in a portion of a gray concrete parking lot designated as for handicapped parking only. At night, an elderly woman stepping from the sidewalk into the parking lot across the curb trips and falls on an exposed portion of the wheel stop. The question is whether the wheel stop in this factual scenario creates an unreasonable risk of harm at night to those walking through the handicapped parking area of the lot. A duty-risk analysis of liability applies to this case. As the Louisiana Supreme Court said in Rando v. Anco Insulations, Inc., *549 08-1163, 08-1169, pp. 26-27 (La.5/22/09), 16 So.3d 1065, 1085-86,
The standard negligence analysis we employ in determining whether to impose liability under La. Civ.Code art. 2315 is the duty/risk analysis, which consists of the following four-prong inquiry: (1) Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, i.e., was it a eause-in-faet of the harm which occurred? (2) Did the defendant(s) owe a duty to the plaintiff? (3) Was the duty breached? (4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached? Mathieu v. Imperial Toy Corp., 94-0952 (La.11/30/94), 646 So.2d 318, 321-22. Under a duty/risk analysis, all four inquiries must be affirmatively answered for plaintiff to recover. As such, in order for liability to attach under a duty/risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific | .^standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element). Davis v. Witt, 02-3102 (La.7/2/03), 851 So.2d 1119, 1127.
Applying a duty-risk analysis to the facts of this case begs the following two questions: Did the wheel stop in its location on the day and at the time (night) of the accident, which resulted in very serious injuries to the plaintiff/appellant, Lillie Labit, create an unreasonable risk of harm to her as a pedestrian in the handicapped parking area of the parking lot? Similarly, comparative fault factors into the liability issues in this case, to-wit, was The Palms Casino, J & R Amusement, and/or Bosarge negligent, and was Mrs. Labit comparatively at fault for her own injuries? La. C.C. art. 2323. What more likely than not happened on Christmas night 2006 cannot be ascertained from an analysis and review of all of the motions for summary judgment and their attached affidavits, deposition, and other evidence.[2]
The majority erroneously, in my view, tries to say that the phrases “unreasonably dangerous” and “unreasonable risk of harm” are basically synonymous. Therefore they surmise that when a defendant talks about a wheel stop not being unreasonably dangerous, the defendant means that the wheel stop did not create an unreasonable risk of harm. As I read the parties’ briefs, it is eminently clearly that the parties meant only that the wheel stop was not unreasonably dangerous. I think everyone is in agreement that a wheel stop per se is not unreasonably dangerous as understood in laymen’s terms, as opposed to what unreasonably dangerous means in our law. It’s not that the wheel stop is and of itself unreasonably dangerous. What you do with the wheel stop — where you |4place it and how you identify it and make it obvious to clientele/patrons — can create an unreasonable risk of harm depending upon the facts of each individual case.[3]
*550 The majority’s reliance on Eisenhardt v. Snook, 08-1287 (La.3/17/09), 8 So.3d 541 is misplaced. First, Eisenhardt was decided after a bench trial, and not on a motion for summary judgment. Second, the plaintiff therein was injured when he fell on some steps that had not been completely clean off by hosing following a spill of trash. As the Court said therein:
Nonetheless, we have recognized that defendants generally have no duty to protect against an open and obvious hazard. If the facts of a particular case show that the complained-of condition should be obvious to all, the condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff. The degree to which a danger may be observed by a potential victim is one factor in the determination of whether the condition is unreasonably dangerous. A landowner is not liable for an injury which results from a condition which should have been observed by the individual in the exercise of reasonable care, or which was as obvious to a visitor as it was to the landowner. It is the court’s obligation to decide which risks are unreasonable based upon the facts and circumstances of each case.
In the case at bar, the court of appeal premised its opinion on a finding that the district court made a factual determination that an unreasonably dangerous condition was created when Ms. Snook washed the steps after spilling trash on them. However, a complete reading of the district court’s reasons for judgment reveals that it made no such finding. Although the district court referred to a “hazard,” it did so in the context of explaining that Mr. Eisenhardt “should have seen the water and known that there was a hazard.” The court further stated, “I think it’s all Mr. Eisenhardt’s fault.” From these statements, it was obvious that the district court made a finding that Ms. Snook was not liable for Mr. Eisenhardt’s injuries because the condition of the steps should have been observed by Mr. Eisenhardt 1 ¡¡in the exercise of reasonable care. [Emphasis added; internal citations omitted.]
Eisenhardt, pp. 5-6, 8 So.3d at 544-45. In context, the Supreme Court said and meant that the court of appeal erred in overturning a factual finding of the trial court that was neither manifestly erroneous nor clearly wrong — that the plaintiff was totally responsible for his own injuries. The issue was not one of unreasonably dangerous but rather whether the situation created an unreasonable risk of harm.
Similarly, the majority’s reliance on McCloud v. Housing Authority of New Orleans, 08-0094 (La.App. 4 Cir. 6/11/08), 987 So.2d 360, is misplaced. The plaintiff in McCloud stepped in a mud filled hole in a construction site. As court said:
[A] plaintiff must prove that the condition of the thing presented an unreasonable risk of harm, or was defective, and that this condition of the thing was a cause-in-fact of her injuries. Both theories are analyzed under the duty/risk analysis. The duty-risk analysis is employed on a case by case basis. Under this analysis, the plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defen *551 dant, and the risk of the harm was within the scope of the protection afforded by the duty breached.
At the hearing on the motion for summary judgment, Defendants did not dispute that they had custody of the construction site at the time of the accident, but they contended that an unreasonably dangerous condition did not exist for which it owed a duty of care to Ms. McCloud under the circumstances.
The existence of a duty is a question of law. In general, the owner or occupier of land has a duty to keep the property in a reasonably safe condition. This includes a duty to discover any unreasonably dangerous conditions on the premises and either correct the condition or warn potential victims of its existence. Moreover, one doing construction work has a duty to properly label, mark, or barricade places in a construction site that present an unreasonable risk of harm to a passerby.
|fiTo determine whether a risk is unreasonable, the court must balance the probability and magnitude of the risk against the utility of the thing. The probability of harm plus the gravity of the harm which may ensue must be balanced against the utility of the thing and its condition on the day of the accident. Moreover, not every minor imperfection or irregularity will give rise to strict liability; the defect must be of such a nature as to constitute a dangerous condition, which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances.
Additionally, the degree to which a danger is evident to a potential victim is one factor in determining whether the condition is unreasonably dangerous. A person who has custody of a thing may have no duty to protect against an open and obvious hazard; if the facts of a particular case show that the complained of condition should be obvious to all, the condition may not be unreasonably dangerous and the defendant may owe no duty to the plaintiff. A landowner (or occupier) is not liable for an injury that results from a condition that should have been observed by the individual in the exercise of reasonable care or was as obvious to a visitor as it was to the landowner. [Boldface emphasis added; internal citations omitted.]
McCloud, pp. 8-5, 987 So.2d at 362-63. Obviously, someone walking across a construction site has a greater duty to observe where he is going as compared to one walking in a paved parking lot. The foregoing boldfaced language in McCloud states the law correctly. In the case before us, a genuine issue of fact is raised as to what an elderly person walking at night in a parking lot might expect. From the facts shown by the parties, the issue cannot be resolved in this case on the present motion for summary judgment.

II.

The record on appeal from the district court in St. Bernard Parish discloses the following operative facts, which the majority omits:
1. Mrs. Labit was 76 years of age at the time of the subject accident. (Relevant because an elderly person’s visual acuity, memory, and balance decline |7with age; further, an elderly person suffering physical injury is more likely than a youthful person suffering the same injury to have greater memory problems.)
2. , The location of the accident scene is not clearly shown in the attached exhibits *552 to the motions for summary judgment, the oppositions, and the replies to the oppositions.[4]
3. The sidewalk, curb, parking lot, and wheel stops are gray colored concrete. (Relevant, inter alia, because in reduced lighting conditions, things made of gray concrete tend to blend in appearance.)
4. The lateral face of the sidewalk or curb is painted yellow, but that yellow is not visible for those walking away from The Palms Casino into the parking lot, and visible only those entering The Palms Casino from the parking lot. (Relevant because one would observe the yellow delineation, consciously or unconsciously, walking into the casino, and would expect, consciously or unconsciously, similar delineation on the way out.)
5. Ms. Brown says that she and Mrs. Labit delivered the gift and meal to Ms. Letellier. Contrariwise, Mrs. Labit says that only she delivered the meal. (Relevant because one person following another to whom he/she is related tends to be less observant, expecting the person in the lead to be watching and warning of hazards.)
6. The record does not clearly disclose how long Mrs. Labit and/or Ms. Brown were inside the casino, although it appears to be a brief period of time. | s(Relevant because of the time it takes one’s pupils to adjust to changes in light; this is discussed further, infra.) Upon exiting The Palms Casino, Ms. Brown was in the lead as she and Mrs. Labit walked back to the van.
Ms. Brown stepped down from the curb into the parking lot to get into the driver’s side door of her van.
7. Although Mrs. Labit in deposition does say that she did not know what she tripped over, her last statement in deposition relative to the issue is that she tripped over a protruded portion of the wheel stop.
8. A hand-drawn diagram of the route taken by Mrs. Labit and/or Ms. Brown is in evidence. (Relevant because people do not always take a ramp or rise, instead choosing to take a shorter route such as stepping off a curb.)
9. Mrs. Labit fell and fell hard, sustaining a concussion, a broken nose in two places, broken cheekbones, bleeding in her brain, fractured one and [perhaps] both orbits of her skull, a stroke, seizures, memory loss and impairment, hallucinations, lacerations, extensive facial bruising, nightmares, depression, et cetera. She remained in the hospital for 3.5 months following her fall. She now requires caregivers and forgets where she is and how to return to her home. (Relevant, inter alia, because the nature of Mrs. Labit’s injuries would cause an elderly person not to remember clearly how her injury occurred.)
10. The accident occurred at night; it is undisputed that the parking lot in that area was only dimly lit. Shadows were present. Part of the lighting was provided by a colored neon light from inside The Palms Casino. (Relevant because lighting *553 affects that which is seen or should be seen and that which is perceived.)
11. The Palms Casino was destroyed by Hurricane Katrina. It was not reopened until November 2006, less than 2 months before Mrs. Labit’s injury. (Relevant because Mrs. Labit would not necessarily remember in any detail the layout of the parking lot.)
|fl12. Bosarge, who was hired by the premises owner (as explained in greater detail infra), further opines that the curb face should not have been the only thing painted; rather four inches on the top of the curb should likewise have been painted. (Relevant to what a pedestrian sees or should see.)

III.

The following are some, but not all, of the unanswered factual considerations that must be analyzed and factored into a consideration of this case, some of which are based upon the record and some from the common human experiences:
• Looking from the dark into a building that is lighted on the inside, one can see what is going on in the building. Contrariwise, one inside a lighted building looking towards the darkness outside cannot clearly see that which is outside.
• One’s pupils contract when entering a lighted building from the darkness; when one exists a lighted building into the darkness, one’s pupils dilate. The eyes’ adjustment can take several seconds. And when exiting under such circumstances, one can find it difficult to see clearly until the eyes adjust to the lighting.
• A casino is a high foot-traffic area with people entering and exiting frequently and at all hours. The interiors are generally lit in such a way to induce patrons to engage in gaming.
• The accident occurred in an area of the parking lot designated for handicapped parking. It goes without saying that those parking in a designated handicapped parking space are going to be physically impaired, whether by movement or sight. See La. R.S. 40:1742 A(l).[5]
ho* At night, unlevel concrete (caused by the presence of a curb) may not be readily perceived as unlevel, especially by people of advanced age and when the lighting conditions are less than ideal. A gray concrete wheel stop at night in a concrete parking lot may not be readily visible absent markings, and/or sufficient lighting.
• A person does not always look down when walking on concrete.
*554 • An individual walking in and out of a parking area for a video poker truck stop at night has an expectation that the pathway is level and clear.
• Not everyone reports every trip and/or fall to the premises owner or premises occupant/lessee. If no injury or no material injury occurs in a trip and/or fall, a report of the incident is unlikely to be made.[6]
• What things had been happening on Christmas day in Mrs. Labit’s life before the accident and what the later evening “entertainment” was going to be for Mrs. Labit after dropping off the gift and meal (e.g., was Mrs. Labit in a rush).
• An individual of advanced age is likely to experience declining night vision and problems with balance and strength.
|n*A significant observable percentage of the patrons of a casino are elderly.

IV.

Mrs. Labit was an invitee onto the premises. Louisiana law on invitees can best be summarized as follows:
An invitee, by definition, is considered to be one who enters upon the premises of another in answer to a direct or implied invitation. But there are few cases in which the occupant of the premises extends a personal invitation which solicits the entrance by various and sundry individuals thereupon. For the most part, cases involving invitation are concerned with implied invitation, that is, invitations which are assumed by virtue of the business of the possessor of the premises and the purpose that occasions the visit of the so-called invitee. It is thus apparent that the purpose of the entry is an important feature in defining and establishing the class in which a given individual should be placed. In determining the purpose of the visitor, with regard to his classification, it is well-established that such purpose must be one concerning a matter of mutual interest, the performance of some duty, a proceeding in the usual course of business, or a matter which will benefit the owner or occupant of the premises.
Mercer v. Tremont & G. Ry. Co., 19 So.2d 270, 275 (La.App. 2nd Cir.1944)(in-ternal citations omitted).
As stated in Doe v. Hawkins, 09-1184 (La.App. 3 Cir. 6/9/10), 42 So.3d 1000:
Our law has long recognized that business proprietors must maintain their premises in a reasonably safe condition for their patrons. Harris v. Pizza Hut of La., Inc., 455 So.2d 1364 (La.1984). A proprietor is not the insurer of his patrons or guests, but he has a two-pronged duty to persons on his premises: he must exercise reasonable care for their safety and he must not expose them to “unreasonable risks of injury or harm.” St. Hill v. Tabor, 542 So.2d 499, 502 (La. 1989) (quoting Walker v. Union Oil Mill, Inc., 369 So.2d 1043, 1047 (La. 1979)). This is a general duty which obligates the proprietor to protect his patrons “from insult, annoyance, and danger.” J.B. Saucier v. Players Lake Charles, LLC, 99-1196, p. 9 (La.App. 3 Cir. 12/22/99), 751 So.2d 312, 318.
Doe, 09-1184, p. 9, 42 So.3d at 1007.
*555 Thus, an invitee is entitled to the expectation that the premises, including pathways for ingress and egress, of a commercial establishment are safe. And the commercial establishment has an affirmative duty to make sure the premises are reasonably safe for anticipated invitees.

V.

The following balancing test must be used to decide whether a commercial establishment owes a duty of care to protect its customers and those visiting the premises: (1) the foreseeability of the risk on the defendant’s property; (2) the gravity of the risk so as to determine the existence and the extent of the defendant’s duty; (3) the greater the foreseeability and gravity of the harm, the greater the duty of care that will be imposed on the business; and (4) a very high degree of foreseeability is required to give rise to a duty to post personnel, but a lower degree of foreseeability may support a duty to implement lesser measures such as installing improved lighting. The plaintiff has the burden of establishing the duty the defendant owed under the circumstances. See Daniels v. Essex Ins. Co., 04-579 (La.App. 5 Cir. 11/30/04), 890 So.2d 599. The foreseeability and gravity of the harm are to be determined by the facts and circumstances of each case.
In sum in the case at bar, it is a genuine issue of fact from the conflicting deposition testimony, affidavits, and exhibits, considering the lighting conditions on 25 December 2006 and the observability of a gray concrete wheel stop located in a gray concrete handicapped parking area, whether the wheel stop and curb created an unreasonable risk of harm for a trip and fall injury to an elderly person walking in t he area. Even Bosarge acknowledges in his deposition that a wheel stop can present a risk of injury if inadequate lighting is present. In evidence is 11sthe deposition of David Hall, a professional engineer employed by the appellants, who opines that wheel stops should not be placed in a foreseeable pedestrian path where low lighting conditions exist; further, color contrasts are needed. Such would certainly apply to a handicapped parking area.[7]
It is Hornbook law that if genuine issues of material fact exist considering all of the circumstances, summary judgment is inappropriate. See La. C.C.P. arts. 966 and 967. The case at bar clearly establishes that genuine issues of material fact exists as to (a) what happened on the night of Christmas 2006, (b) what the lighting conditions were like in the parking lot on that evening, and (c) the length of time Mrs. Labit was inside The Palms Casino and how long it would reasonably take for her eyes to have adjusted going into the night and into a partially lit parking lot. The issue for the trier of fact is not only the reasonableness of the actions and inactions of The Palms Casino and/or J & R Amusement respecting the parking lot, but also the comparative fault, if any, of Mrs. Labit and even her daughter on that Christmas night. A duty-risk analysis of facts embraces a “but for” analysis of those same facts. That is, would an injury have occurred but for an elderly Mrs. Labit exiting The Palms Casino at night in an apparently partially lit parking lot and tripping over a gray concrete wheel stop located on top of gray concrete, regardless of whether a vehicle partially obstructed the view of *556 part of the wheel stop.[8] These are all material facts precluding summary judgment in favor of The Palms Casino and J & R Amusement.

VI.

| ^However, like the majority, I do not find that the trial court erred in granting the motion for summary judgment of Bo-sarge. Bosarge had no duty to Mrs. La-bit; he had no contract, express or implied, with her. Bosarge’s only duty was to the person who employed him to res-tripe the parking lot. What he told or did not tell The Palms Casino and J & R Amusement is between them. Bosarge was only hired to restripe the parking lot over the same previous markings that were in place before Hurricane Katrina. In fact, Bosarge acted only as the person who billed J & R Amusement for the restriping work, relying upon Danny Puffer to relay and describe to him the work that needed to be done so that he, Bo-sarge, could quote a price. Bosarge subcontracted the restriping work out to Mr. Puffer who did the actual work. And Bo-sarge only went out to the site after the work was completed and then related presentation to his bill for the services performed, not as a safety advisor about repainting the striping in the parking lot.[9] He was not consulted or even asked by The Palms Casino’s or J & R Amusement’s offieers/employees for an opinion concerning safety. Although Bosarge worked for Jefferson Parish in traffic engineering and has testified in the past as an expert in that field, he is not a licensed traffic or civil engineer. Bosarge himself, even as a direct defendant, opines that light can affect what type of markings are needed in a parking lot. He is aware of the requirements of the ADA Accessibility Guidelines as mandated by La. R.S. 40:1742 A(l) and its requirements.[10] He further opines that the curb face should not have been the only thing painted; rather four inches on the top of the |1scurb should likewise have been painted. He over and over again asserts that he was never employed by The Palms Casino and/or J & R Amusement to advise them before Mrs. Labit’s fall what type of painting or striping was needed. He states that bollards would have been a better choice than concrete wheel stops in the handicapped area next to the curb and sidewalk.

VII.

In my view, this case presents one of the clearest cases why (on the affidavits, depositions, and exhibits (as supplemented) attached to the motions for summary judgment and the oppositions thereto) *557 summary judgment should not have been granted in favor of The Palms Casino and J & R Amusement.
I respectfully dissent in part from the decision of the majority.

. A "wheel stop” is an object placed at the front of a parking stall to keep a vehicle from striking a wall (or in the case at bar, the concrete curb.)

. The motions for summary judgment were submitted to the trial court without oral argument.

. Obviously, if for some unknown reason a wheel stop had been placed by The Palms Casino immediately in front of the main door partially obstructing it and Mrs. Labit had tripped over it, one would have to say that the wheel stop created an unreasonable risk of harm to her in its location, even though the *550 wheel stop in and of itself was not unreasonably dangerous.

. The location of the accident is shown in a black and white photocopy of a photograph attached to a motion for summary judgment. The photograph is blurred, dark, and unclear to understand what the scene actually looked like and therefore would have likewise been unclear to the trial judge. The movers apparently did not submit the actual color photographs to the trial judge, instead submitting an affidavit from Darryl Eckert, manager of J & R Amusement, with photocopies of photographs attached. Further, both copies of the record on appeal are photocopies, not the original record bearing original signatures. The absence of the color photographs from the physical record in the case at bar creates a misunderstanding of the facts, just as occurred in the appeal in Zito v. Advanced Medical Emergency Services, Inc., 11-0218, p. 18 n. 10, (Tobias, J., dissenting), unpub. (La.App. 4 Cir. 9/28/11), 72 So.3d 490, writ granted, 11-2382 (La. 1/13/12), 77 So.3d 967.

. La. R.S. 40:1742 A(l) states:
Each state agency and political subdivision having jurisdiction over street parking or a government facility and each owner or lessee of a public facility shall, in accordance with applicable zoning and building codes, provide and maintain a minimum number of specially designed and marked motor vehicle parking spaces for the exclusive use of persons whose vehicles are identified by license plates, hang tags, or special parking cards for the mobility impaired issued pursuant to R.S. 47:463.4 or 463.4.1. The mobility impaired parking spaces shall adhere to the ADAAG [American Disabilities Act Accessibility Guidelines] specifications and shall include mobility-impaired loading and unloading areas, access aisles, access ramps, and curb cuts. The minimum number of such parking spaces shall be as established by ADAAG. Public facility, as the term is used in this Section, shall be as defined in R.S. 40:1732, and shall include private property which is open to the public and to which the public is invited for commercial or governmental purposes. [Emphasis supplied.]

. In footnote 3 of the majority opinion, the statement is made, “The plaintiffs did not produce any evidence to indicate a history of tripping incidents.” In essence, in context, the statement ignores the issue that perhaps Mrs. Labit was the first person who tripped and sustained serious injuries. Someone has to be first.

. The majority’s reliance upon Doane v. Wal-Mart Discount Stores, Inc., 96-2716 (La.App. 4 Cir. 6/25/97), 697 So.2d 309, is misplaced. Doane was decided following a trial, not on a motion for summary judgment.

. This is not to say that Mrs. Lábil was not negligent, even substantially negligent, for her trip and fall; but the evidence does not remove reasonable inferences and direct evidence that The Palms Casino and/or J & R Amusement were also negligent.

. While the majority notes that Darryl Eckert of J & R Amusement states that he relied upon Bosarge to properly "reconstruct” the parking lot, Bosarge emphatically asserts that all that he was called upon to do was res-triped the parking lot (touch up the paint). Regardless of the conflict in testimony, in the absence of Bosarge being made a party defendant by J & R Amusement and/or The Palms Casino, the issue is immaterial to a decision of any duty owed to Mrs. Labit by Bosarge. And contrary to what Mr. Eckert says and the majority notes, it is immaterial that other parking lots in St. Bernard Parish do not have painted wheel stops. Different businesses have different clientele necessitating different precautions; none of the other premises are a video poker truck stop casino with a parking lot like that of J & R Amusement.

.Interestingly, both the appellants and ap-pellees in brief speak of what is required under ASTM [American Society for Testing and Materials] requirements, not the statutorily mandated ADA Accessibility Guidelines.